IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM DUKES, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17-cv-7095 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| COOK COUNTY SHERIFF'S OFFICE; THOMAS J. DART, in his official capacity as SHERIFF OF COOK COUNTY; COOK COUNTY, ILLINOIS; MEDICAL DIRECTOR OF CERMAK HEALTH SERVICES OF COOK COUNTY, in his or her official capacity; DIRECTOR OF NURSING OF CERMAK HEALTH SERVICES OF COOK COUNTY, in his or her official capacity; M. ADDISON; E. ALTMAN; J. ARIAS; M. BOZYK; N. BUCHANAN-SMITH; R. FOSTER; C. GALINDO; J. MERAZ; P. MIRANDA; J. OGRODNIK; W. PARTEE; Z. PERRY; A. QURESHI; W. RIVERA; J. RODRIGUEZ; D. SALMON; S. TAYLOR; J. TORRES; L. TORRES; C. ANDREWS; A. BLOODWORTH; Q. DUNMARS; P. GREEN; S. JAMES; L. LOCKE; S. PRATT; and D. TRIPLETT, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff William Dukes ("Plaintiff") brings suit under 42 U.S.C. § 1983 seeking redress for Defendants' alleged failure to address his complaints of chest pain or provide him with his prescribed heart medications on a regular, uninterrupted basis when he was housed within the Cook County Department of Corrections ("CCDOC"). Currently before the Court are motions to dismiss the governing third amended complaint filed by Defendants Altman and Partee [128] and Defendants Cook County, Addison, Andrews, Aria, Bloodworth, Boyzk, Buchanan-Smith, Dart, Dunmars, Foster, Galindo, Green, Locke, Meraz, Miranda, Ogrodnik, Qureshi, Rivera, Rodriguez, Salmon, L. Torres, and Triplett [129]. For the following reasons, both motions, [128] and [129],

are denied. The parties are directed to file a joint status report that includes a proposed fact discovery cutoff date no later than March 22, 2021. In addition, counsel may contact the Courtroom Deputy at any time if they desire a referral to the Magistrate Judge for a settlement conference.

**I.     Background**

According to the allegations of the complaint, which the Court must accept as true for present purposes, Plaintiff has a history of heart issues within his extended families. On October 4, 2012, while incarcerated at Pontiac Correctional Center, Plaintiff suffered a heart attack. Afterward, he was given a stent and prescribed medications to manage his blood pressure and cholesterol. Plaintiff was also prescribed nitroglycerin "to act as a safety medication." [90] at 7. Medical staff informed Plaintiff that his medications were needed to protect him from further complications of heart disease and that he would need to regularly take those medications for the rest of his life. While living at Pontiac Correctional Center, Plaintiff regularly received his medications, without interruption. In October 2015, Plaintiff's conviction was overturned. Plaintiff remained incarcerated until July 2019, awaiting a new trial. During this period, Plaintiff was housed primarily at the Livingston County Jail, where he regularly received his medications without interruption. Medical Staff at the Livingston County Jail were aware of Plaintiff's heart disease and past heart attack.

As a pre-trial detainee, Plaintiff was transferred to the CCDOC from time to time so he could attend court proceedings. The Cook County Sheriff's Office operates the CCDOC and provides and supervises security staffing within the CCDOC. Defendant Dart is the Sheriff of Cook County. Plaintiff names Dart as a Defendant in his official capacity as a policy-making official for the CCDOC. Cook County provides and supervises medical staff within the CCDOC

through Cermak Health Services of Cook County ("Cermak"). Plaintiffs names Cermak's Medical Director and Director of Nursing as Defendants in their official capacities as policy-making officials for Cook County.

Defendants Addison, Altman, Arias, Bozyk, Buchanan-Smith, Foster, Galindo, Meraz, Miranda, Ogrodnik, Partee, Perry, Qureshi, Rivera, Rodriguez, Salmon, Taylor, J. Torres, and L. Torres are all correctional officers who were assigned to monitor the tiers to which Plaintiff was assigned during certain specified months between November 2015 and November 2017. Plaintiff refers to these Defendants collectively as "Defendant Security Staff" "[d]ue to the highly repetitive nature of Plaintiff's interactions with security staff while housed within his cell." [90] at 5. Defendants Andrews, Bloodworth, Dunmars, Green, James, Locke, Pratt, and Triplett, whom Plaintiff refers to collectively as "Defendant Medical Staff," are medical personnel who were assigned to administer medications and address the medical needs of inmates within Plaintiff's housing unit while he was in CCDOC custody.

According to the Complaint, Plaintiff was transferred to CCDOC approximately twelve times between November 2015 and November 2017 to attend court proceedings. Some of the transfers lasted a week, while others lasted months. Each time Plaintiff was transferred into the CCDOC, he was accompanied by transfer paperwork documenting his family history of cardiovascular disease, his past heart attack, his ongoing heart disease, and his medications. Each time Plaintiff was transferred to the CCDOC, and while he was housed there, he had issues with regularly receiving his heart disease medications without interruption. Whenever Plaintiff failed to receive his heart disease medications at the CCDOC, he would experience chest pains. Plaintiff alleges that he "reported his chest pains to the correctional officers assigned to his housing unit" and also "reported his medication issues to the correctional officers assigned to his housing unit."

[90] at 8. However, the correctional officers "did not take any actions on his behalf to address his chest pains or to resolve his medication issues." *Id*. In addition, Plaintiff alleges that he "reported his medication issues to the nurses who administered medications to his housing unit," but "[t]he nurses who administered medications to Plaintiff's housing unit did not take any actions on his behalf to address his chest pains or to resolve his medication issues." *Id*. Plaintiff alleges that he "submitted numerous health service request slips and grievances to seek treatment for his chest pains and to address the interruptions in receiving his heart disease medications, but his requests were largely ignored." *Id*.

Based on these facts, Plaintiff asserts three claims under 42 U.S.C. § 1983. Counts I and II are deliberate indifference claims against Defendant Security Staff and Defendant Medical Staff, respectively. Count III is a *Monell* claim brought against Dart and Cermak's Medical Director and Director of Nursing, in their official capacities.

**II.     Legal Standard**

For purposes of a motion to dismiss under Rule 12(b)(6), the Court "'accept[s] as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff.'" *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2018) (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016)). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011). The Court may also consider "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *O'Brien v. Village of Lincolnshire*, 955 F.3d 616, 621 (7th 2020). In opposing a Rule 12(b)(6) motion, a plaintiff is "free to 'elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings.'" *Peterson v. Wexford Health Sources, Inc.*,

4

986 F.3d 746, 753 n.2 (7th Cir. 2021) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts which, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007)).

### III. Analysis

#### A. Sufficiency of Allegations Concerning the Individual Defendants

Plaintiff brings suit against the individual Defendants for failing to do anything when he told them that he was experiencing chest pains and not receiving his heart medication. "Under the Eighth Amendment, prison officials are responsible for providing healthcare to incarcerated persons who cannot obtain healthcare on their own." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021). "To determine if the Eighth Amendment has been violated in the prison medical context, we perform a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016) (en banc); see also *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 751 (7th Cir. 2021). "Denying or delaying appropriate treatment to an incarcerated person suffering from avoidable pain can violate the Eighth Amendment." *Howell*, 987 F.3d at 653.

Plaintiff brings his deliberate indifference suit against the individual Defendants pursuant to 42 U.S.C. § 1983. "Suits under § 1983 are meant to deter state actors from using the 'color of state law' to deprive individuals of rights guaranteed by the Constitution." *Tom Beu Xiong v.*

5

*Fischer*, 787 F.3d 389, 397 (7th Cir. 2015) (quoting *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998)). To bring a Section 1983 claim against an individual, "the plaintiff must show two elements: (1) the party against whom the claim is brought qualifies as a 'person acting under the color of state law'; and (2) the conduct alleged amounted to a deprivation of rights, privileges, or immunities under the Constitution or the laws of the United States." *Id.* (quoting *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). To prevail on her claim, "the plaintiff must establish individual liability"—that is, the plaintiff's "'*personal involvement* in the alleged constitutional deprivation.'" *Johnson v. Rimmer*, 936 F.3d 695, 710–11 (7th Cir. 2019) (quoting *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017)). The personal-involvement requirement will also be "satisfied if the constitutional violation occurs at a defendant's direction or with her knowledge or consent." *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) (citing *Wilson v. Warren County*, 830 F.3d 464, 469 (7th Cir. 2016)). Thus, "[w]hile the defendant need not have participated directly in the deprivation of the plaintiff's constitutional right to be held liable, he or she must nonetheless have 'known about the conduct, facilitated it, approved it, condoned it, or turned a blind eye for fear of what they might see.'" *Rasho v. Elyea*, 856 F.3d 469, 478 (7th Cir. 2017) (quoting *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012)) (cleaned up).

Both groups of individual Defendants move to dismiss Plaintiff's deliberate indifference claims on the basis that they contain insufficient factual detail to satisfy Rule 8(a). Altman and Partee argue that the claims against them should be dismissed because "Plaintiff only makes generalized allegation that he 'reported' the chest pain and medication issues to unnamed officers and nurses throughout the span of nearly four years." [128] at 3-4. Similarly, the other group of Defendants maintains that the Complaint is deficient because "Plaintiff fails to identify the dates he 'informed' each individual Defendant of his alleged heart disease and missing medications,

6

how each defendant responded to such information, or how each individual officer or medical personnel 'did not take action on Plaintiff's behalf.'" [129] at 4 (quoting [90] at 8-10).

While the Complaint's allegations could be more robust, they are sufficient to satisfy Rule 8(a)(2) by providing fair notice of Plaintiff's claims and the grounds on which they rest, and "some indication of … time and place." *Thomas v. Washington*, 362 F.3d 969, 970-71 (7th Cir. 2004). "Who, what, where, when, how" level of specificity is not required, as it would be if Plaintiff's claims were subject to Rule 9(b)'s heightened pleading standard. *Id.*; cf. *Muskegan Hotels, LLC v. Patel*, 986 F.3d 692, 698 (7th Cir. 2021). The Seventh Circuit has recently explained that, "[t]hrough a bureaucracy that diffuses individual responsibility and accountability, healthcare in a prison or jail may be delivered (or not delivered) so that it is difficult or even impossible to assign the individual responsibility for deliberately indifferent failure that offers the simplest path to § 1983 liability." *Howell*, 987 F.3d at 655. Given this difficulty, Plaintiff has done his best to pinpoint the individuals responsible for ensuring he received medical care and provides enough detail to allow his claims to be developed (or debunked) through discovery.

According to the Complaint, Plaintiff was incarcerated at CCDOC periodically over about a two-year period, approximately a dozen times total between November 2015 and November 2017. See [90] at 3-6.[1] Plaintiff alleges that each time he was taken to CCDOC, he had problems getting his medications. Id. at 7-8. He identifies one or two prison guards for each period who were responsible for monitoring his housing unit during each month in which he spent time incarcerated at CCDOC. He does not detail each interaction with each guard because there were many, given Defendants' alleged repeated failures to ensure that Plaintiff received his medication. Plaintiff also identifies the medical staff who were "assigned to administer medications and/or

---

[1] Plaintiff's incarceration during more recent periods, going into 2019, is not at issue in the Complaint.

7

address the medical needs of inmates within Plaintiff's housing unit while he was in CCDOC custody," although does not provide specific dates. *Id*. at 5-6. Plaintiff further clarifies in his response brief that he "is alleging that he had individual, personal interactions with each of the Other Defendants, during which he communicated information regarding his past heart attack and ongoing heart disease, current chest pains, and interruptions to his heart disease medications, but nothing was seemingly done to address his issues." [136] at 5.

These allegations may be minimal, but they provide a sufficient starting point for Defendants when interviewing witnesses, looking for relevant records, deposing Plaintiff, and going about the other ordinary tasks of discovery. That is when the details of Plaintiff's claim can be explored and refined. True, there are many Defendants, but that is simply a result of CCDOC relying (at least allegedly) on so many individuals to ensure that inmates receive the medications they need to maintain their health. At the end of the day, Plaintiff will have the burden of convincing the factfinder that certain Defendants were, in fact, deliberately indifferent. If Plaintiff cannot show—through testimony, records, or other relevant evidence—that he told a particular Defendant about his medical problems and that the Defendant responded with deliberate indifference, then Plaintiff will lose his case. But we are not to that point yet, and much of the relevant evidence likely resides with Defendants and will need to be examined in discovery. Of course, that is not to say that discovery should be used as a fishing expedition. Plaintiff had a heart attack while in prison, and since then has been prescribed medication that he must take to control his blood pressure and cholesterol and prevent chest pains and another heart attack. When Plaintiff has been in the custody of other correctional institutions, he received his medication without incident. For some reason, however, whenever Plaintiff was transferred to CCDOC to attend court proceedings, there allegedly was a breakdown in his medical care and he did not receive his

medications on their required schedule, or at all. If Plaintiff's allegations are accurate, there must be some explanation for the breakdown. Plaintiff's complaint identifies at least two potential causes: the individual Defendants were indifferent; and/or CCDOC maintains a policy or custom that results in deliberate indifference to serious medical conditions such as Plaintiff's heart condition. Perhaps discovery will reveal Plaintiff's allegations to be unfounded or unsupported, but Plaintiff has alleged sufficient facts to satisfy Rule 8(a) as to his claims against the individual Defendants.

Finally, the Correctional Officer Defendants argue that the Complaint against them should be dismissed on the additional basis that they must "defer to medical staff when it comes to providing medication administration to detainees" and "are not responsible for administering medication to Plaintiff." [129] at 6. This is not a proper basis for dismissal, however, because it relies on facts outside the complaint. There is nothing in the complaint to suggest that any medical staff made a judgment to *stop* giving Plaintiff his heart medication whenever he was transferred to CCDOC custody, and that the correctional officers were simply following doctors' orders. Rather, the Complaint suggests that the failure to provide him with his medication went against the express orders of the doctors who told him that he must continue to take the medicine for the rest of his life. In other words, Plaintiff alleges that he was trying to get correctional officers to follow doctors' orders, not "alter the course of medication administration," as Defendants claim. *Id*.

Further, *Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010), on which Defendants rely, see [129] at 6, provides that non-medical jail administrators are "entitled to defer to the judgment of jail health professionals" only "so long as [they do] not ignore the inmate." *Id*. at 440. Indeed, it is well settled that "nonmedical officials can 'be chargeable with ... deliberate indifference' where they have 'a reason to believe (or actual knowledge) that prison doctors or their assistants are

9

mistreating (or not treating) a prisoner.'" *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (quoting *Hayes v. Snyder*, 546 F.3d 516, 625 (7th Cir. 2008)). They "cannot simply ignore an inmate's plight." *Id*. Ultimately, "[t]he plaintiff must demonstrate that 'the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to 'an excessive risk to inmate health or safety.'" *Id*. "Once an official is alerted of such a risk, the refusal or declination to exercise the authority of his or her office may reflect deliberate disregard." *Id*. at 756. Here, Plaintiff alleges that he was ignored by everyone—the Cook County Correctional Officers in charge of his housing units and the Cermak medical professionals overseeing his care—even though he told them that about his medical history, chest pains, and need for medication. This is enough to state a claim for deliberate indifference.

      **B.**      **Sufficiency of *Monell* Allegations**

Plaintiff brings a Section 1983 *Monell* claim against Dart in his official capacity as Cook County Sheriff and against Cermak's Medical Director and Director of Nursing in their official capacities as policymakers for Cook County. In *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), the Supreme Court "rejected the common-law theory of *respondeat superior* liability for an employee's actions" and "crafted a new, more restrictive standard to determine when a municipal government itself has caused a deprivation of constitutional rights." *Howell*, 987 F.3d at 653. To hold a municipality liable under *Monell*, "[a] plaintiff must show that the violation was caused by (1) an express government policy; (2) a widespread and persistent practice that amounted to a custom approaching the force of law; or (3) an official with final policymaking authority." *Id*. *Monell* applies not only to municipal corporations, but also to "private corporation[s] that ha[ve] contracted to provide essential government services." *Glisson*, 849 F.3d at 378-79. In some cases, a municipality may be found

10

liable under *Monell* even in the absence of a finding that any individual defendant violated the plaintiff's constitutional rights. See *id*.

In his governing Complaint, Plaintiff alleges that he repeatedly informed both security staff and medical staff of his past heart attack, ongoing heart disease, chest pains, and the interruptions to his heart disease medications. He also repeatedly submitted health service request slips and grievances to ensure that other security staff and medical staff members were aware of the issues with his medical care. But nothing was done. Plaintiff alleges that this "conduct was so persistent and widespread that it represents standard operating procedure at the CCDOC." [90] at 10. He seeks to hold Dart responsible because Cook County provides and supervises medical staff within the CCDOC and Dart is a policy-making official for CCDOC. He seeks to hold Cermak's Medical Director and Director of Nursing responsible because they are policy-making officials for Cook County. These officials, Plaintiff alleges, "allowed the wrongful conduct to continue, which in essence ratified the conduct." *Id*. at 11.

Dart argues that he cannot be held responsible for a *Monell* violation, because the Sheriff's Department does not provide medical care at CCDOC; Cermak does. Assuming that is a fact of which the Court may take judicial notice, it does not provide a basis for dismissing Plaintiff's claim. Dart's correctional officers are not medical professionals who make medical judgments. But they do interact daily with inmates, many of whom need medical care and, presumably, regular medications. They can also be held personally liable for deliberate indifference for ignoring an excessive risk to inmate health and safety, as explained above. See *Arnett*, 658 F.3d at 755.

Defendants also contend that the Complaint should be dismissed because "Defendants are unaware of what is the unconstitutional widespread practice Plaintiff is alleging in his Complaint." [129] at 8. Further, Defendants maintain, "[t]o successfully plead a *Monell* claim, Plaintiff 'must

show more than the deficiencies specific to his own experience'; he must show 'systemic and gross deficiencies in staffing, facilities, equipment, or procedures in a detention center's medical care system.'" [129] at 9 (quoting *Daniel v. Cook County*, 833 F.3d 728, 734 (7th Cir. 2016)).

However, Defendants are asking the Court to apply the wrong legal standard for this stage of the case. The *Daniel* case on which Defendants rely was decided at summary judgment and explains what it takes "[t]o *prove* an official policy, custom, or practice within the meaning of *Monell*." 833 F.3d at 734-35 (emphasis added). The Seventh Circuit requires much less at the pleading stage. In *White v. City of Chicago*, 829 F.3d 837 (7th Cir. 2016), *cert. denied*, 137 S. Ct. 526 (2016), the plaintiff brought an individual claim against an officer for violation of his Fourth Amendment rights and also alleged that the officer acted "in accordance with a widespread practice of the police department." 829 F.3d at 844. The Seventh Circuit held that the district court had erred (albeit harmlessly) in holding that the plaintiff "failed to state a *Monell* claim because his claim was 'based upon the sole allegation that [the officer] acted in accordance with a widespread practice of the police department of the City of Chicago when seeking a warrant.'" *Id.* The court of appeals explained that the plaintiff's allegation was enough to satisfy the "short and plain statement of the claim" requirement of Rule 8(a)(2) and that Plaintiff "was not required to identify every other or even one other individual" whose rights had been violated by the complained-of process. *Id.*; see also *Williams v. City of Chicago*, 2017 WL 3169065, at *8–9 (N.D. Ill. July 26, 2017) (explaining that "Post-*White* courts analyzing *Monell* claims … have 'scotched motions to dismiss' premised on arguments that the complaint does not contain allegations beyond those relating to the plaintiff" and collecting cases); *Hill v. Cook County*, 463 F. Supp. 3d 820, 843 (N.D. Ill. 2020); *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1079 (N.D. Ill. 2018).

Instead, "[i]n determining whether a plaintiff has sufficiently pled a widespread practice in a *Monell* claim, the Court looks to the instances of misconduct alleged, the circumstances surrounding the alleged constitutional injury, and additional facts probative of a widespread practice or custom." *Williams*, 315 F. Supp. 3d at 1079. The ultimate question is whether "there is a policy at issue rather than a random event." *Hill*, 463 F. Supp. 3d at 841; see also *Howell*, 987 F.3d at 654. "This may take the form of an implicit policy or a gap in expressed policies, or a series of violations to lay the premise of deliberate indifference." *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). Further, the Seventh Circuit has recognized that *Monell* liability may be premised on a "deliberate policy not to require any kind of formal coordination of medical care either within an institution … or across institutions for prisoners who are transferred." *Glisson*, 849 F.3d at 379.

Here, the governing Complaint alleges facts that plausibly suggest Plaintiff was denied his heart medication as part of a widespread practice rather than a random event. While Plaintiff does not identify other inmates who had the same problem, he experienced the alleged practice at least a dozen times himself. By contrast, while living at Pontiac and Livingston Correctional Centers, Plaintiff regularly received his medications, without interruption. These facts suggest an institutional problem—such as lack of training or policies—rather than (or in addition to) a few employees who simply didn't do their jobs. Plaintiff does not pinpoint a particular cause of the alleged widespread practice of denying heart medication to patients who require it, but that is not required at the pleading stage and can be explored in discovery.

  C. **Statute of Limitations**

Defendants' final argument is that the "the statute of limitations bars all claims through June 25, 2017," which is two years before Plaintiff filed his current Complaint replacing John and

Jane Doe correctional officers and nurses with individually named defendants.[2] Plaintiff responds that his claim is for a continuing violation, which did not accrue until November 2017, the last time he was detained at CCDOC. Additionally, Plaintiff argues, the statute of limitations was tolled while he completed the prison's grievance process. Plaintiff also contends that it would be inequitable to enforce the statute of limitations to bar any part of Plaintiff's claim, because "[u]ndersigned counsel was originally appointed by this Court to represent Plaintiff [after] Plaintiff had repeatedly encountered obstacles in his attempts to identify the correctional staff and medical staff he wanted to name as defendants in this matter," and "[e]ven after undersigned counsel began his investigation to amend the complaint, there were additional delays in producing the documents needed to identify the correct individuals." [136] at 15.

The application of the statute of limitations to Plaintiff's claims cannot be resolved on a motion to dismiss. A limitations defense is "not often resolved on a Rule 12(b)(6) motion because 'a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations.'" *Amin Ijbara Equity Corp. v. Village of Oak Lawn*, 860 F.3d 489, 492 (7th Cir. 2017) (quoting *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009)). Dismissal is appropriate only "when the complaint alleges facts sufficient to establish that the suit is indeed tardy." *Id.*; see also *NewSpin Sports, LLC v. Arrow Electronics, Inc.*, 910 F.3d 293, 299–300 (7th Cir. 2018).

Defendants fail to demonstrate that Plaintiff's claims are barred by the statute of limitations as a matter of law. In their reply brief, [144], they make no mention of the continuing violation doctrine or how it might apply in Plaintiff's case, instead apparently assuming that Plaintiff has separate "claims" for each day he was aggrieved. *Id.* at 9. However, the Seventh Circuit has

---

[2] Courts look to the personal injury laws of the state where the injury occurred to determine the statute of limitations in a section 1983 case; in Illinois, it is two years. See 735 ILCS 5/13–202.

"recognized that a section 1983 Eighth Amendment claim based on deliberate indifference in the delivery of medical care does not necessarily allege a single event or a series of events, but may describe an ongoing denial of care." *Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 517 (7th Cir. 2019). In such cases, the Seventh Circuit has found "a continuing violation for accrual purposes," with the violation lasting for "as long as the defendants had the power to do something about [the plaintiff's] condition." *Id.* (internal citation and quotation marks omitted); see also *Heard v. Sheahan*, 253 F.3d 316 (7th Cir. 2001). Plaintiff also may be able to take advantage of the doctrine of equitable tolling, which "'permits a plaintiff to sue after the statute of limitations has expired if through no fault or lack of diligence on his part he was unable to sue before, even though the defendant took no active steps to prevent him from suing,'" if the plaintiff can "demonstrate 'reasonable diligence.'" *McWilliams v. City of Chicago*, 415 F. Supp. 3d 867, 876 (N.D. Ill. 2020) (quoting *Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 561-62 (7th Cir. 1996)). Without any input from Defendants on how either of these doctrines apply, the Court must deny their motion to dismiss the Complaint on statute of limitations grounds.

**IV.  Conclusion**

For these reasons, both pending motions to dismiss, [128] and [129], are denied. The parties are directed to file a joint status report that includes a proposed fact discovery cutoff date no later than March 22, 2021. In addition, counsel may contact the Courtroom Deputy at any time if they desire a referral to the Magistrate Judge for a settlement conference.

Dated: March 8, 2020

Robert M. Dow, Jr.
United States District Judge

15