IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM DUKES ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:17-CV-07095 |
| v. ) | |
| ) | The Honorable Nancy L. Maldonado |
| COOK COUNTY SHERIFF'S OFFICE, ) | |
| *et al*., ) | Magistrate Judge Maria Valdez |
| ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S REPLY TO MOTION TO BAR "ACCUFLO" RECORDS AND
TO ISSUE SANCTIONS AGAINST DEFENDANTS**

NOW COMES Plaintiff, WILLIAM DUKES ("Plaintiff"), by and through his attorneys, Mauck & Baker, LLC, and submits this Reply to Defendants' Response to Plaintiff's Motion to Bar "Accuflo" Records and to Issue Sanctions Against Defendants. In support, Plaintiff states as follows:

**ARGUMENT**

**Helpfully**, Defendants acknowledge their failure to furnish records concerning over 700 omitted doses of medication to Plaintiff. (*See* Dkt. 256, p. 3) Prior to the delivery of the "missing" Accuflo records, discovery showed Mr. Dukes received only 800 of 1,846 prescribed doses—a 43% received rate, 57% failure. After the late disclosures, the number of failures dropped to 329, equating to a still woeful 18% (329/1,846) failure rate.

**Also helpfully,** Defendants acknowledge that any violation should be "a proportionate sanction for an infraction of the rule considering all the relevant circumstances" (*See* Dkt. 256, p.

Page **1** of **8**

11). Plaintiff agrees.

**Unhelpfully,** Defendants repeatedly imply that they were never fully aware that "missed doses" were a core element of Plaintiff's case. For example, Defendant state in their Response brief that "Plaintiff disclosed their missed doses theory to defense counsel on July 6, 2022." (*See* Dkt 256, p. 12). Did defense counsel not read the complaint? Did they not both furnish and seek discovery? Was Dukes deposed by a paralegal? Was someone asleep when they defended depositions?

The wrongful information given by Defendants damaged Plaintiff: Plaintiff's billing records show 640 hours of attorney time to date, 95.2 hours of paralegal, and out-of-pocket expenses of $14,467. Most of this time was worked during the period between the initial 2018 deficient disclosures, which showed a 57% failure rate on furnishing medication, and the current disclosure on October 25, 2022. Presumably, defense fees and expenses have put a comparable burden on taxpayers.

**Unhelpfully,** Defendants also throw around excuses in their Response Brief such as, "administrative error," and obscure responsibility by wrongly stating Defendants cured the deficiency promptly. **Misleading.** Defendants always had those records. They were always on their computers or in their files. Whether through negligence, incompetence or willfulness of the record keepers, the attorneys, or a combination of both, Defendants withheld critical information for four years.

The affidavit of Cook County Cermak Health Information Management Director, Linda Kampe ("Kampe"), who had been employed with Cermak since 2008, reveals and admits a disturbing pattern of delay. She states under oath (as attached to Defendants' Reply) that the attorneys representing Defendants, who have always included Cook County and Sheriff, Thomas

J. Dart, first informed her on *October 19, 2022*, that plaintiff "alleged that between 2015-2017 [that] he had not been administered over 1000 doses of various heart medications." (*See* Dkt. 256-2, Ex. B, para. 26). In that case, the Court should sanction the *attorneys* for Defendants themselves, Devore Radunsky, LLC, instead of or in addition to the Defendants for failing to ask for additional records of Mr. Dukes after attending Susan Shebel's deposition on May 11, 2022, and after receiving the settlement demand letter on July 6, 2022. This admission demonstrates the withholding and/or failure to diligently seek Plaintiff's medical records for four years was part of a pattern of negligence. The Accuflo system of medical records is not new to Cook County or Thomas J. Dart—it is only new to Plaintiff, as of October 25, 2022.

The Defendants in the conclusion of their Response assert: "Plaintiff disclosed their missed doses theory to defense counsel on July 6, 2022." (*See* Dkt. 256-2, p. 2). However, that is the exact issue—counsel for Defendants waited until October 19, 2022, to even ask their clients, Cook County, which includes the medical arm of Cook County Department of Corrections ("CCDOC"), Cermak, and Thomas J. Dart, until after the fact discovery deadline of October 15, 2022!

Ms. Kampe, stated under oath that she was not informed until October 19, 2022, that plaintiff had "alleged that between 2015-2017 he had not been administered over 1000 doses of various heart medications." (*See* Dkt. 256-2, Ex. B, paras. 26-27). She continued by stating that on October 19, 2022, that she "advised defendants counsel for the first time.

Ms. Kampe's declaration is alarming given that Cermak Nurse Supervisor, Susan Shebel, RN ("Shebel"), whose main responsibility was to audit the nurses' administration of medication at CCDOC, testified on May 11, 2022, about the existence of paper medical records being used before and after the electronic medical records were used at CCDOC. (*See* Ex. 1, p. 38:4-40:2). Shebel started working as a Nursing Supervisor at Cermak in 2012 and one of her main duties was

to audit the administration of medications to inmates. (*See* Ex. 1, p. 20:21-21:23). Shebel testified that she had to review paper and electronic records from CCDOC since 2012. (*See* Ex. 1, p. 38:4-40:10). She stated that if she had to review records that were old enough that she knew were paper records that someone would scan the records for her to review. (*See* Ex. 1, p. 39:18-40:2). Shebel's testimony shows that Defendants and counsel were clearly informed of the necessity to inquire about paper medical records or additional medical records by at least May 11, 2022. Shebel alerted defense counsel to the missing doses and/or missing records at her deposition on May 11, 2022:

> Q: "… the first date Mr. Dukes received medication was on March 27, 2016, but yet he had orders on November 24, 2015. How does that happen?" A: "…I don't know the answer to your questions, except the only thing that I could think of is that it's documented in another place." (*See* Ex. 1, p. 207).

Defense counsel were at that May 11, 2022 deposition. The fact that Defendants instead waited until October 19, 2022, demonstrates the egregiousness of their failure to seasonably supplement Plaintiff's records.

Defendants also incorrectly claim that "Plaintiff's counsel fully explored and flushed out his medication administration theory and opinions at the deposition of [Defendant] Nurse Ashley Bloodworth on February 4, 2022, when she testified that 'if it's ordered, I would give it as ordered. Whatever the order stated, that's what I would follow.'" (*See* Dkt. 256, p. 7). Nurse Bloodworth's testimony was important because during the time period that Defendant Bloodworth administered medications to Mr. Dukes, he received all of his medications. However, during weeks or months in Plaintiff's records where there are no medications administered, Plaintiff had no nurse to depose for that time period because of the void of evidence of medication administration by *any* nurses at CCDOC.

Defendant Bloodworth testified that she began working as a nurse in October 2016 at CCDOC until August 2018, and that during that entire time period when she administered

Page **4** of **8**

medication to a detainee, she always entered her medication administration in an electronic medical system contemporaneously. (*See* Dkt. 256-2, Ex. C, 17:21-18:1-15, 28:2-8). She was unfamiliar with medication administration by nurses that were not entered into an electronic medication system by the nurse. (*Id.* at 28:13-20). Interestingly, when comparing Plaintiff's medication orders to the medication administration during the time period in which Defendant Bloodworth worked, Mr. Dukes always received his medication according to the CCDOC records (962 pages that was produced in late 2018).

The time period in which Mr. Dukes was deprived of 1,046 doses of his medications was between November 2015 until January 2017. If Plaintiff had received the "Accuflo" records earlier during open discovery, between late 2018, 2019, 2020, 2021, or most of 2022, Plaintiff would have been able to compare the two sets of records and seen how they interacted and taken the depositions of several individuals whose names appear in the "Accuflo" records. Instead, Plaintiff is left wondering why it took Defendants and their counsel over four years to produce allegedly accurate medical records that allegedly favor their case. It seems more like an opportunity for Defendants to hide information from the Court and/or for defense counsel to "run the meter." It is painful to suggest that counsel were willful in their withholding of critical records, but the circumstances point either to willfulness or gross negligence and incompetence by professional record keepers and experienced counsel. As it were, Kampe testified that "the Accuflo system was phased out in March 2017." (*See* Dkt. 256-2, Ex. B, para. 17). Thus, Defendants and their counsel would have known to ask Cook County, Thomas J. Dart and the other Defendants for additional "Accuflo" medical records, especially since counsel for Defendants have represented Cook County and the Sheriff's Office in other cases.

Even if Plaintiff on July 6, 2022 had first articulated the 1046 *precise* number of heart medication doses that he was denied, Defendants' counsel were informed from their own client's testimony, Shebel, that paper records existed as of May 11, 2022. However, Defendants in their Response repeatedly insinuate that it is somehow Plaintiff's duty himself to continually inquire about whether all of Plaintiff's medical records have been produced when Defendants and Defendants' counsel were informed that more records were available and should have been produced. Defendants or their attorneys failed in their duty to seasonably supplement the discovery in a case in which Plaintiff's legal theory has always been about him being denied his heart medications while housed at CCDOC.

### **Plaintiff Suffered Harm of Not Having All of the Alleged Medical Records in His Case For Four Years When Plaintiff's Personal Identifying Information Has Not Changed.**

Plaintiff did suffer harm – he had to fight an uphill battle for four years to obtain the alleged records from CCDOC, all the while Defendants' counsel are racking up enormous attorneys' fees for Cook County to pay. This occurred when Mr. Dukes, *pro se*, sought his records and before the Court appointed John Mauck of Mauck & Baker as pro bono counsel (after Mr. Dukes had his conviction vacated and was released after 14 years in prison, the Court allowed Mr. Dukes to retain Mauck & Baker on a contingent fee basis). Now at the thirteenth hour, after discovery is closed, Defendants produced alleged records called "Accuflo" records and claim an "administrative error." Plaintiff has alleged from the beginning of his case that he was denied doses of his heart medications while housed at CCDOC. Plaintiff was under no duty as an inmate at CCDOC to actually count how many doses he had missed while housed there. He certainly tried to get the records. He knew he had missed many doses (329 at latest count!) but it was not until an in-depth analysis by his attorneys of the CCDOC records and grievances was performed in May and June

2022 that Plaintiff knew with *apparent* precision how many actual doses he had been denied. Interestingly, it was also after Plaintiff furnished *Glisson v. Indiana*, 849 F3d 2017 (Seventh Cir. en banc), to defense counsel—which awarded substantive damages— to an inmate based on missed medication. (*See* Ex. 2).

If Plaintiff had the opportunity to properly analyze and dissect the "Accuflo" records during open discovery, he would have taken the deposition of Defendant Nurse, Lisa Locke, whose name is on the Accuflo records and other nurses or individuals whose names are on these records to understand if they were accurate. Plaintiff would have asked Defendant Locke why, for example, there are notes in the Accuflo records that state that Mr. Dukes "refused" medications on dates when Mr. Dukes was not even housed at CCDOC (ex. 2/14/2016) but rather had been at Livingston County Jail since February 12, 2016. Had these records been "favorable" to Defendants, they would have asked for them prior to October 19, 2022, rather than waiting until the very last moment.

### Appropriate Sanctions

Plaintiff has requested barring the Accuflo records. In response, and in view of the undisputed facts and Defendants' admission, the Court might structure sanctions as follows:

1. Rule Plaintiff is entitled to recover attorneys fees at market rates for the period of initial under-disclosure in 2018, until October 25, 2022, and submit a fee petition for that period;

2. Rule, in the alternative, that Defendants and/or defense counsel should pay Plaintiff all fees accrued by defense counsel during the period of under-disclosure as an appropriate sanction deterring the extreme negligence, incompetence, and/or bad faith of Defendants and counsel combined. The order should be for an ascertainable amount, but the Defendants and counsel could decide amongst each other how to apportion responsibility for mis-disclosure, and most helpfully,

how to avoid future litigation and damages to incarcerated persons by careless record keeping or careless omission of medication.

Dated: February 10, 2023          Respectfully Submitted,

                                          **WILLIAM DUKES,**

                                 By: */s/ John W. Mauck*
                                       John W. Mauck

                                 By: */s/ Judith A. Kott*
                                       JUDITH A. KOTT

John W. Mauck
Judith A. Kott
MAUCK & BAKER, LLC
One N. LaSalle St., Ste 600
Chicago, Illinois 60602
Telephone: (312) 726-1243
Facsimile: (866) 619-8661
jmauck@mauckbaker.com
jkott@mauckbaker.com