**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| WILLIAM DUKES, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:17-CV-07095 |
| | ) | |
| vs. | ) | Honorable Nancy L. Maldonado |
| | ) | |
| THOMAS DART, et al. | ) | Magistrate Judge Maria Valdez |
| | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF FRCP 56 MOTION FOR SUMMARY JUDGMENT**

NOW COMES Defendant Sheriff Thomas J. Dart, in his official capacity; Defendants A. Bloodworth, C. Andrews, P. Green, L. Locke, Q. Dunmars, and D. Triplett ("Medical Staff Defendants"); M. Addison, J. Arias, , R. Foster, C. Galindo, J. Meraz, P. Miranda, J. Ogrodnik, A. Qureshi, W. Rivera, D. Salmon, and S. Taylor, ("Individual Officer Defendants"); and Cook County, a Body Politic and Corporate ("Cook County" and *collectively* "Defendants"), by and through their attorneys, Jason E. DeVore and Zachary G. Stillman, pursuant to Federal Rule of Civil Procedure 56 and applicable local rules, and for their Memorandum of Law in Support of Motion for Summary Judgment, state as follows:

**BACKGROUND**

Defendants incorporate herein their N.D. Ill. Rule 56.1 Statement of Undisputed Material Facts in Support of Motion for Summary Judgment.

Plaintiff alleges that Individual Correctional Officer Defendants and Medical Defendants were aware of and deliberately indifferent to his serious medical needs. Plaintiff has not presented any clear evidence for deliberate indifference against either. Plaintiff cannot state which Defendants he allegedly made aware of his cardiac condition – the most specific conduct he can

#380774v2

point to is an alleged 35-minute delay before arrival of medical assistance requested by Officer Addison after complaints of chest pain. Additionally, Plaintiff's Count III *Monell* claim against Defendants Sheriff Dart and Cook County fails for failure to allege a widespread practice in violation of Plaintiff's rights or the law. Plaintiff's failure to bolster his claims with evidentiary support warrants summary judgment in favor of Defendants.

## LEGAL STANDARD

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Only disputes over facts that might affect the lawsuit's outcome, under the governing law, will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1998). The court draws *reasonable* inferences from the record in the light most favorable to the non-movant. *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir. 1987) (citing *Matthews v. Allis-Chalmers*, 769 F.2d 1215, 1218 (7th Cir. 1985). Summary judgment must be entered if the nonmovant cannot meet burden of providing evidence that would raise a question of material fact. *Waldridge v. Am. Hoechst Corp.* 24 F.3d 918, 920 (7th Cir. 1994).

## ARGUMENT

I.  **Individual Officer Defendants Are Entitled to Summary Judgment for Plaintiff's Claim of Deliberate Indifference to a Serious Medical Need (Count I)**

Plaintiff's claims must fail against the Individual Officer Defendants as no evidence has been asserted to support the contention that any were deliberately indifferent to Plaintiff's serious medical needs. The only evidence developed during the course of this case reflects that Officer Defendants were not deliberately indifferent to any of Plaintiff's needs.

To establish a § 1983 claim for deliberate indifference to a prisoner's serious medical needs, a plaintiff must show: "(1) that he had an objectively serious medical condition; (2) that

2

defendants knew of the condition and were deliberately indifferent to treating plaintiff; and (3) that this indifference injured plaintiff." *Manzales v. Krishna*, 113 F. Supp. 3d 972, 978 (N.D. Ill. 2015) (citing *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010)). Courts' determinations of whether jail officials acted with deliberate indifference look to their subjective state of mind. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). For a jail official's conduct to constitute deliberate indifference, plaintiffs do not need to "show that the official intended harm or believed that harm would occur[,]" *Vance*, 97 F.3d at 992, but "showing mere negligence is not enough." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013) ("Deliberate indifference is not medical malpractice."). Rather, the plaintiff must "provide evidence that an official *actually* knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (citing *Farmer*, 511 U.S. at 837) (emphasis in original). Officials are not liable where they can show that "they were unaware even of an obvious risk to inmate health or safety." *Id.*

With respect to Count I, Plaintiff's medication allegations in his operative complaint contradict his sworn testimony, and Plaintiff has presented no other evidence to support these claims against the individual officers. Plaintiff himself acknowledged no officers knew of his condition and that he had no idea if officers reviewed or were able to review his medical records. Ex. B 321:9-11. Plaintiff came up with the names of the officer Defendants based on the tiers he was on at the time and the officers assigned to them. Ex. B 67:7-21; 238:10-23.

Secondly, Plaintiff testified repeatedly under oath that individual officer Defendants were not responsible for administering his medications and they were instead administered by nurses. Ex. B 52:25-53:7; 79:17-21; 80:4-81:16; 130:10-13. Plaintiff neither alleges nor suggests that the

3

individual officer defendants had access to his medications or tried to administer them. To the contrary, Plaintiff testified that he understood that in the CCDOC the *nurses* administered medications, not the correctional officers, and clearly and repeatedly testified that particular nurses were the problem. Ex. B 236:10-17 ("They had a nurse that came around and did [medication distribution]. Whether she had your medication on the cart or not was a different story."; " 'Oh, I'll go look and bring it back.' They'd never come back."; " 'don't have it on the cart. The pharmacy hasn't sent it. You've got to wait for them.' "; "or 'fill out a medical request and wait.' "); *see also Id.* ("The doctors weren't the problem. It was the nurse passing out the medication not going to get it."). Plaintiff admitted his medication-related grievances were referred by CCDOC employees to Cermak Health Services, and responses were received. Ex. B 236:15-237:7.

At the same time, Plaintiff has been unable to identify *any* of the nurses whom he alleges stood before him on "medication pass" in the facility but refused to go and "get" his missing medications. Ex. B. 54:5-11. Plaintiff suggests that the medical records will identify these individuals, Ex. B 59:22-23, but also states emphatically that the medical records of Cermak cannot be trusted. Ex. B 100:25-102:2.

Somehow, Plaintiff believes that the sum of all this evidence is the liability of the officer defendants for deliberate indifference to his medical needs under Count I with respect to his medication issues. Plaintiff suggests, without adequate factual development or legal support, that individual officers can be held legally responsible for any alleged failure to administer his medications, even in the absence of evidence that they there were involved in the administration of medication, and even in light of clear evidence that they were NOT authorized to prescribe or administer medication. Plaintiff's theory has failed to tie any particular or repeated failure to any of these Defendants. For example, Plaintiff describes an incident in which Defendant Addison

4

#380774v2

called for medical, and medical did come, after 35 minutes. Ex. B 328:18-330:24. Though Addison claims such a 35-minute delay did not or would not have occurred, Ex. F 91:9-17, regardless, this falls very far from the standard for deliberate indifference.

Defendants submit that absent any evidence that the Individual Officer Defendants were authorized to administer mediation or to overrule the decisions of medical staff, Count I fails on this issue. Non-medical correctional officials are entitled to defer to the judgment of medical professionals on questions of prisoner medical care. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). Such does not constitute deliberate indifference. *Rice ex rel Rice v. Corr. Med. Servs.*, 675 F.3d 650, 676 (7th Cir. 2012). When a detainee is receiving care from a medical professional, jail personnel are entirely justified in believing them to be receiving adequate treatment from a capable professional. *Johnson v. Doughty*, 433 F.3d 1001, 1010-11 (7th Cir. 2006).

The remaining aspect of Count I refers to chest pain, as Plaintiff has combined his chest pain issues with his medication issues: "Defendant Security Staff did not take any actions on Plaintiff's behalf to address his chest pains or to resolve his medication issues." ECF No. 90 ¶ 71. But Plaintiff has again failed to put together a factual theory that details the actions that he alleges any of the individual officer defendants deliberately failed to take. On the contrary, Plaintiff testified as to a specific circumstance in which, though delayed (by only 35-minutes), requested medical help did arrive. Ex. B 329:5-331:23. This is especially damaging to Plaintiff's claims in a scenario in which it is undisputed that Plaintiff's medications, including nitroglycerin for chest pain, were administered by nurses, and Plaintiff has not been able to connect any of these individual defendants with incidents where no treatment was received for "chest pain."

While Plaintiff was unable to identify any nurses involved in his claims allegedly as a result of the alleged practice of turning badges around so names were not visible to detainees, Ex. B 54:1-

5

#380774v2

11, he did state that the officers with those nurses were a different story, as they had "metal name badges on their shirt[s][,]" and "most [they] knew by … name." Ex. B 59:2-16. This raises serious concerns and questions regarding Plaintiff's knowledge of who was involved in the conduct alleged, and likewise regarding the existence of any claim against Individual Officer Defendants based on awareness of his medical condition.

Ultimately, Plaintiff has not presented or identified evidence from which a reasonable factfinder might conclude that any of the individual officer defendants knew that plaintiff was not receiving his medications or was being denied treatment for reported chest pains. As such, there can be no deliberate indifference on the part of the Individual Officer Defendants, and summary judgement should be granted for the Individual Officer Defendants on Count I.

## II. Medical Staff Defendants Are Entitled to Summary Judgment for Plaintiff's Claim of Deliberate Indifference to a Serious Medical Need (Count II)

Plaintiff's claims against Medical Staff Defendants also must fail on account of lack of knowledge of Plaintiff's condition. No evidence has been asserted supporting the contention that any Medical Staff Defendants were aware of Plaintiff's cardiac condition or chest pains. Additionally, Plaintiff was unable to name any nurses aware of his condition at his deposition. Ex. B 258:23-25. Like above, the only evidence developed during the course of this case reflects that Medical Defendants were not deliberately indifferent to Plaintiff's needs. Rather, they were unaware of such needs in the first place. Ex. C 113:24-114:7; 115:17-116:7.

If the risk of a particular course of medical treatment (or lack thereof) is obvious enough, a factfinder can infer that an official knew about and disregarded it. *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *Cole v. Fromm*, 94 F.3d 254, 260 (7th Cir. 1996). However, in the medical context, obviousness of risks can be obscured by the need for specialized expertise to understand the implications of a course of treatment. *Petties*, 836 F.3d at 729. Therefore, courts have found that

6

#380774v2

where such risks resultant of treatment decisions "may be imperceptible to a lay person[,] … a medical professional's treatment decision must be such … substantial departure from accepted … judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261–62 (7th Cir. 1996). In contrast, it is insufficient to show that some medical professionals would have chosen a different course of treatment. *Steele v. Choi*, 82 F.3d 175, 179 (7th Cir. 1996).

Seventh Circuit courts have also noted "inexplicable delay[s] in treatment … serv[ing] no penological interest" to support findings of deliberate indifference. *Petties*, 836 F.3d at 730 (citing *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008) (guards could be liable for delaying treatment of broken nose a day and half)). However, jails and prisons are settings of limited resources, therefore delays are common and accepted. *Petties*, 836 F.3d at 730. Whether the length of such delay is tolerable depends on the seriousness of the condition and ease of providing treatment. *Id.; compare Miller v. Campanella*, 794 F.3d 878, 880 (7th Cir. 2015) (given extreme ease of supplying sufferer of gastro-esophageal reflux disease with over-the-counter pills, failing to do so for two months created fact question over deliberate indifference), *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) (finding refusal to refer patient to dentist actionable as "basic dental examination … not … expensive or unconventional treatment"), *Arnett v. Webster*, 658 F.3d 742, 752 (7th Cir. 2011) (medical personnel could not stand idly by for ten months while patient arthritis worsened), *Jones v. Simek*, 193 F.3d 485, 490 (7th Cir. 1999) (viable claim where doctor delayed scheduling appointment with specialist, then failed to follow specialist advice, while inmate condition worsened), *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009) (state employees liable for 4-day delay where prisoner complained treatment caused pain), *with Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997) (no valid claim for six-day delay in treating

a mild cyst infection). Delay in providing treatment is actionable under the Eighth Amendment where independent evidence of the exacerbation of an injury or unnecessary prolonging of pain from delay is shown. *Williams v. Liefer*, 491 F.3d 710, 716 (7th Cir. 2007) (delay actionable where medical records showed unnecessarily prolonged plaintiff's pain and blood pressure); *Gil v. Reed*, 381 F.3d 649, 662 (7th Cir. 2004) (hours of needless suffering can constitute harm).

Under the "professional judgment rule" followed by federal courts, decisions made by medical professionals are "presumptively valid[,] with liability imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 987-88 (7th Cir. 1998) (quoting *Youngberg v. Romero*, 457 U.S. 307, 322-23 (1982)). Courts review the actions of jail medical staff handling needs of detainees use the professional judgment rule in reviewing the actions of jail nurses and doctors handling the medical needs of detainees. *Id.*

Plaintiff testified at his deposition that "many" times, nursing staff would come around for medication distribution and would simply not have his medication. Ex. B 53:5 – 54:4. He further testified that despite his allegedly telling them about his prescription for nitroglycerin and history of heart attacks, they would tell him that they were unable to give him the medication because it wasn't on his record. While he was unable to identify any nurses by name, he asserted it was because they usually "had their IDs flipped backwards ... so you can't see their names." Ex. B 54:1-11. Despite this problematic alleged practice, Plaintiff failed to describe such in his original grievance, only noting "the time, the date, and the am or pm med line." Ex. B 58:10-20. In fact, Plaintiff's first ever mention of this issue was at deposition in response to inquiry regarding nurses he informed about his condition. Plaintiff's continued inability to name any medical staff

#380774v2

defendants in this regard without reference to his records presents serious issues relating to his contentions in this case and the evidentiary support therefor.

Plaintiff has presented no evidence as to the actual knowledge of any Medical Staff Defendant in this matter of his chest condition or medication needs or wants, or the deliberate indifference of said staff to the same. Accordingly, Defendants cannot have been deliberately indifferent, and summary judgment is proper for Medical Staff Defendants.

### III. Plaintiff's Deliberate Indifference Claims Also Fail as a Result of the Lack of Injury and Absence of Causation by Defendants (Counts I & II)

A plaintiff seeking relief in a court of law unequivocally holds the burden of proving and substantiating his claims. *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56-57 (2005). Section 1983 "creates a species of tort liability[,]" *Roe v. Elyea*, 631 F.3d 843, 863-64 (7th Cir. 2011) (quoting *Heck v. Humphrey*, 512 U.S. 477, 483 (1994)), therefore, § 1983 plaintiffs must establish both a state actor's violation of their constitutional rights, and the actual *causation* of injury therefrom. *Harris v. Kuba*, 486 F.3d 1010, 1014 (7th Cir. 2007). Plaintiff cannot establish the existence or causation of injury by Defendants, therefore summary judgment is proper.

In matters of tortious injury liability, there must be a clearly established causal connection between the conduct at issue and the injury. *Myers v. Ill. Central R. Co.*, 629 F.3d 639, 642 (7th Cir. 2010). Where injuries are not obvious to a layman, establishment of causality necessitates expert testimony. *Brooks v. Union Pacific R. Co.*, 620 F.3d 896, 900 (8th Cir. 2010). On the other hand, where an injury is obvious to a lay person, such as a broken leg or obvious gash, expert testimony is not needed. *See Moody v. Maine Cent. R.R. Co.*, 823 F.2d 693, 695 (1st Cir. 1987). Lay witness testimony is restricted to "opinions or inferences which are ... rationally based on the perception of the witness[,]" Fed. R. Evid. 701, therefore, for injuries not of obvious origin and with "multiple

9

#380774v2

potential etiologies," causation necessitates expert testimony. *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 46-47 (2d Cir. 2004).

Plaintiff asserts 1000+ doses of medication missed as a CCDOC detainee, which in turn exacerbated existing cardiac problems and caused his heart attack a year after release. Grp. Ex. A; ECF Nos. 90, 246. He is ineligible to make this assertion. Plaintiff cannot testify as a lay witness to the causation of complex medical subjects and issues such as the cardiovascular system. He can testify about his perceptions of incidents and experienced symptoms, but establishment of connection between missed doses and those experiences and incidents are far outside of the realm of admissible testimony as such are too removed causally and are inherently not obvious to a lay person. *Crawford v. Davis*, 597 F. Supp. 3d 1243, 1245-46 (S.D. Ill. 2022); *see also Torres v. City of Chi.*, No. 12 C 7844, 2015 WL 12843889, at *8 (N.D. Ill. Oct. 28, 2015).

Plaintiff here has not proven his case such that asserted evidence or testimony raises any genuine question of material fact. He has no ability to establish his injuries or a causal relationship between them and the conduct of Defendants at issue. At best, Plaintiff is able to make the evidentiary connection of Defendant Addison to an experienced 35-minute delay in arrival of medical attention, which, paradoxically, shows the opposite of Plaintiff's assertions – action by Defendants. Ex. B 330:13-332:3.

Plaintiff may have been able to argue about causation of his heart attack a year post-release with the support of expert witness testimony, but that ship has sailed. This Court's October 19, 2022, order, set November 15, 2022, as Plaintiff's deadline for disclosure of expert witnesses. ECF No. 240. November 15 passed without any filings or requests for extension, leaving Plaintiff without an expert, and without ability to prove causation of his alleged injuries.

#380774v2

While Plaintiff will also assert the testimony of his treaters as evidence of his injuries and experience, their testimony is merely conjecture. Plaintiff's treaters were not there in the jail and cannot testify with certainty as to any aspect of treatment, or results of that treatment. Plaintiff's treaters willing to state the existence of any causal link between his treatment as a detainee and alleged missed doses, and the increased likelihood and eventual occurrence of an additional heart attack, do so entirely unsupported by available evidence and existing studies.

While Plaintiff is unable to assert his own lay testimony to prove causation of his alleged injuries, and his treaters' testimony are conclusory and based on conjecture, Defendants' expert, Dr. Fintel, reviewed Plaintiff's records and concluded that it was improbable that Plaintiff missed as many doses as claimed, as well as that any missed doses as a detainee could have increased his likelihood of heart attack a year later. Ex. E 35:1-36:10; 57:19-58:2. Specifically, Fintel testified that it was "very clear … that … he had not suffered any harm during … his incarceration from 2012 through 2019 as evidenced by the echocardiogram and the stress test." While he did note that in missing medications contiguously for months, there "could be a potential for harm[,]" for Plaintiff, it was "absolutely" not the case. Ex. E 35:11-36:1. Fintel also noted that establishment of causation may have been a different story had Plaintiff's heart attack occurred closer to his time as a detainee. Ex. E 36:1-10 ("[H]ad he been admitted to the hospital with a heart attack … at the end of 2015 or 2016[,] … a time in which Plaintiff alleges he was not receiving … medications, then a reasonable relationship cause and effect would be established between an untoward outcome early in 2016 and the alleged withholding of medications[.]"). Additionally, Fintel opined that Plaintiff's smoking and drug use were also likely factors contributing to Plaintiff's condition since release. Ex. E 69:1-70:9; 88:22-90:15.

#380774v2

Plaintiff's cardiac condition and its alleged deterioration from his treatment as a detainee involve non-obvious injuries or conditions, therefore his lay testimony is inadmissible to prove the purposes of causation. Accordingly, Summary judgment for Defendants on Counts I - II is proper.

## IV.     Plaintiff Has No Support for His *Monell* Claim (Count III)

Plaintiff has developed absolutely no evidence to support his *Monell* claims in Count III against Cook County and the Cook County Sheriff. A plaintiff wishing to prove a *Monell* claim must develop evidentiary support to show: (1) that he has suffered the deprivation of a constitutional right; and (2) that an official custom or policy of the City caused that deprivation. *Monell v. N.Y. City Dept. of Social Servs.*, 436 U.S. 658, 694-95 (1978). Satisfying the second element requires a plaintiff to establish that his constitutional violation was "caused by (1) an express municipal policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by a municipal agent with final policymaking authority." *Milestone v. City of Monroe*, 665 F.3d 774, 780 (7th Cir. 2011).

To state a widespread practice, a plaintiff must prove facts showing policymakers' awareness of the behavior, or that the behavior was so persistent and widespread that they should have been aware. *Latuszkin v. City of Chi.*, 250 F.3d 502, 505 (7th Cir. 2001). A municipality is only liable if there exists a policy that, while not formally authorized, is so deeply ingrained and established so as to "constitute a custom or usage with ... force of law." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005).

### A. *Plaintiff has not Presented Evidence to Support a Monell Claim Against Defendant Sheriff*.

With respect to the *Monell* claim against the Cook County Sheriff in particular, Plaintiff has failed to set forth facts that would establish that he has been deprived of a constitutional right pursuant to widespread practice of the Cook County Sheriff. The *Monell* claim in Count III, like

12

#380774v2

the § 1983 claim in Count I, is based on the alleged issues with the administration of his medication and failures to adequately address chest pain. ECF No. 90 ¶ 93. Plaintiff specifically alleges that Defendant Sheriff "must have known about the constitutionally deficient responses of CCDOC security staff and medical staff to inmate complaints of chest pain and interruptions to heart disease medications." ECF No. 90 ¶ 93. Plaintiff further asserts that "[t]he conduct was so persistent and widespread that it represents standard operating procedure at the CCDOC[,]" and that "[d]espite knowledge of subordinates' conduct, Sheriff Dart ... allowed [it] to continue, ... in essence ratif[ying] the conduct[.]" ECF No. 90 ¶ 94. As such, Defendant Sheriff ultimately "caused the delay and denial of Plaintiff's medical care." ECF No. 90 ¶ 95.

In summary, Plaintiff's *Monell* claim merely repeats the Count I allegations and calls the conduct widespread enough to establish an unconstitutional policy or procedure of Defendant Sheriff. But Plaintiff has presented no law that would render Defendant Sheriff liable under *Monell* for any practice of the medical defendants, and Plaintiff has not developed any evidence that the Sheriff had any widespread policy or procedure the allowed or condoned correctional officers withholding or denying medications, or of failing to address complaints of chest pain.

Plaintiff clearly testifies that the Sheriff's policy was to notify medical providers of requests for medications or complaints of chest pain. Ex. B 28:4-21; 81:3-9. He also testified that nurses, not correctional officers, administered medications at his housing tier. Ex. B 79:17-80:12. These facts are undisputed. More to the point, is Plaintiff's inability to identify circumstances in which employees of the Sheriff *did not* follow official policies – Plaintiff generally testified that he had to wait too long for nurses to provide medications, Ex. B 61:18-21; 113:23-114:5; 174:17-175:15; 186:3-18; 197:4-21; 204:17-205:5, that the nurses did not have his medications, Ex. B 52:25-54:11; 107:14-108:2, or that they claimed no record of his prescription for nitroglycerin. Ex.

13

B 53:17-54:4. As opposed to setting forth a pattern in which correctional officer defendants followed a widespread policy or procedure of ignoring Plaintiff's medication requests and complaints, Plaintiff only establishes their adherence to the policy of notifying medical staff of issues. Plaintiff appears to falsely believe his non-satisfaction actualizes liability under *Monell*.

Plaintiff also takes issue with not being permitted to carry his nitroglycerin on his person. Ex. B 113:18-21; 146:3-17; 151:24-152:21. Plaintiff repeatedly suggests this to mean he would be subject to chest pain without ability to immediately address the same on his own accord with medication. Ex. B 151:15-152:9. But Plaintiff was well aware personally of the fact that nitroglycerin was available as such to him for his own safety and the safety of others because it is a controlled substance. Ex. B 113:18-21; 154:24-156:10; 157:18-25. Dr. Fintel also testified that he does not even allow regular patients to carry nitroglycerin on their person to take when they feel like it due to risk of harmful effects. Ex. E 67:8-68:12. If this is the basis of his *Monell* claim, it fails as a matter of law, as correctional facility policy restrictions, especially relating to controlled substances, are lawful and necessary. *Beard v. Banks*, 548 U.S. 521, 528 (2006).

"It is not enough to demonstrate that policymakers could, or even should, have been aware of … unlawful activity because it occurred more than once. A plaintiff must show that "the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Bridges v. Dart*, 950 F.3d 476, 479 (7th Cir. 2020). Plaintiff has failed to present sufficient evidence to support his *Monell* claim, therefore Count III should be dismissed against the Cook County Sheriff.

### B. Plaintiff has not Presented Evidence to Support a Monell Claim against Defendant Cook County/Cermak.

Plaintiff has developed no evidence to show a "widespread practice" as required for a *Monell* claim. He cannot name a single Defendant Officer or Medical Staff, to whom particular

actions, knowledge, or allegations of wrongdoing can be attributed. "A practice is not widespread if it took place two, three, or four other times." *Jackson v. City of Chi.*, No. 20 C 5630, 2021 WL 1056988, at *7 (N.D. Ill. Mar. 18, 2021). "Widespread" means more than "a few" or several. *Palmer v. Marion Cnty.*, 327 F.3d 588, 596 (7th Cir. 2003) (proof of isolated acts of misconduct will not suffice).

Plaintiff's failure to show a widespread practice supports summary judgment in favor of Defendants based upon Seventh Circuit caselaw, including *Grieveson v. Anderson*, 538 F.3d 763, 773 (7th Cir. 2008) (Plaintiff's affidavits regarding "four instances" insufficient to prove policy relating to other inmates than himself and survive summary judgement). *Id.* at 773-74. The court in *Palmer v. Marion Cnty.*, 327 F.3d 588 (7th Cir. 2003), rejected plaintiff's *Monell* claim and determined that plaintiff's allegation of widespread practice was unsupported by his affidavit, which merely attested to his personal observation of practices alleged without specificity as to when and where such other events occurred. *Id.* at 595.

As in *Grieveson* and *Palmer*, the bare minimum of complaint allegations and Plaintiff's personal knowledge have been asserted as evidence of the challenged practices being widespread. Plaintiff could not recall the names of those he alleges were aware of and deliberately indifferent to his medical needs, Ex. B 311:22-312:12, and he has no allegations or evidence therefor as to the specific conduct of any individual defendant. Here too, Plaintiff cannot survive summary judgment as he fails to assert any evidentiary basis for establishment of a widespread practice violating his rights or harming him, therefore Defendants should be entitled to summary judgment.

### V. Plaintiff's Indemnification Claim Fails

Any remaining indemnification claim relies on prevailing on any of the counts brought against Defendants. Defendants are entitled to summary judgment on all counts, therefore no claims remain for which Cook County would need to indemnify.

15

#380774v2

**CONCLUSION**

Defendants are entitled to summary judgment regarding Counts I through III of Plaintiff's Complaint. The evidence, coupled with prevailing law, shows that Defendants were not deliberately indifferent to Plaintiff's medical needs. Also, Plaintiff's failure to cultivate evidence or take any other affirmative actions to prove his *Monell* claims warrants summary judgment for Defendants. Finally, Count III as against Cook County also necessarily fails as indemnity necessitates a claim for satisfaction.

WHEREFORE, for the foregoing reasons, Defendants Sheriff Thomas Dart; A. Bloodworth, C. Andrews, P. Green, L. Locke, Q. Dunmars, and D. Triplett; M. Addison, J. Arias, R. Foster, C. Galindo, J. Meraz, P. Miranda, J. Ogrodnik, A. Qureshi, W. Rivera, D. Salmon, and S. Taylor; and Cook County, by and through their attorneys, respectfully request entry of an order as follows:

(1) Defendants' Motion for Summary Judgment is granted; and
(2) Defendants are entitled to summary judgment regarding Counts I through III

Dated: June 15, 2023

Respectfully Submitted,

By: */s/ Jason E. DeVore*
Jason E. DeVore, One of the Attorneys for Defendants

**DEVORE RADUNSKY LLC**
Jason E. DeVore (ARDC # 6242782)
Troy S. Radunsky (ARDC # 6269281)
Zachary G. Stillman (ARDC # 6342749)
230 W. Monroe Street, Ste. 230
Chicago, IL 60606
(312) 300-4479 telephone
jdevore@devoreradunsky.com

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that **Defendants' FRCP 56 Motion for Summary Judgment**, **Memorandum of Law in Support**, and **LR 56.1 Statement of Undisputed Material Facts** were filed on June 15, 2023, with the Northern District of Illinois ECF System, serving a copy to all parties.

*/s/ Zachary Stillman*
Zachary Stillman

#380774v2