IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM DUKES, ) | |
| ) | CASE NO. 1:17-cv-07095 |
| Plaintiff, ) | |
| ) | Honorable Judge Nancy Maldonado |
| v. ) | |
| ) | Magistrate Judge Maria Valdez |
| COOK COUNTY SHERIFF'S ) | |
| OFFICE et al. ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS**

NOW COMES Plaintiff WILLIAM DUKES (hereinafter referred to as "Plaintiff") by and through their attorneys Mauck & Baker, LLC, in support of their Cross-Motion for Summary Judgment and pursuant to Local Rule 56.1(a), submit the following as their statement of material facts to which Plaintiff alleges there is no genuine issue of material fact and, as a result, are entitled to judgment as a matter of law.

**Parties**

1. Plaintiff, William Dukes is a resident of Cook County, Illinois, and a Citizen of Illinois. *Dkt. 90* ¶2; *Dkt. 183* ¶2.

2. At all times relevant, Defendants A. Bloodworth, C. Andrews, P. Green, L. Locke, Q. Dunmars, and D. Triplett were employed as medical staff by Cermak Health Services. *Dkt. 90* ¶¶32-39.

3. At all times relevant, Defendants M. Addison, J. Arias, R. Foster, C. Galindo, J. Meraz, P. Miranda, J. Ogrodnik, A. Qureshi, W. Rivera, D. Salmon, and S. Taylor were

1

appointed corrections officers of the Cook County Sheriff. *Dkt. 90* ¶¶12-30; *Dkt. 183* ¶¶12-30.

4. Defendant Cook County is a Body Politic and Corporate under Illinois Law, located in the Northern District of Illinois. *Dkt. 90* ¶7; *Dkt. 183* ¶7.

5. Defendant Sheriff Thomas J. Dart is an elected official serving as the Cook County Sheriff. *Dkt. 90* ¶8; *Dkt. 183* ¶8.

6. The Court has subject matter jurisdiction over this dispute under 28 U.S.C. § 1331 because Plaintiff's claims are brought pursuant to 42 U.S.C. § 1983.

7. Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b), because all parties are residents of the Northern District of Illinois and the events giving rise to the instant matter took place in the Northern District of Illinois.

## Procedural History

8. On November 14, 2019, Plaintiff's Third Amended Complaint was filed with this Court. *Dkt. 90*.

9. Plaintiff's operative complaint presents three counts against Defendants: Count I alleges a claim of Deliberate Indifference to Plaintiff's Serious Medical Need in violation of the Eighth and Fourteenth Amendments against Individual Officer Defendants; Count II alleges a claim of Deliberate Indifference to Plaintiff's Serious Medical Need against Medical Staff Defendants; and Count III alleges a *Monell* claim for Deliberate Indifference to Plaintiff's Serious Medical Need against Sheriff Dart and the County. *Dkt. 90*.

10. On Oct. 18, 2018, Plaintiff first served interrogatories and requests to production of documents on Defendants. *Dkt. 246* ¶3.

11. On Nov. 9, 2018, Defendant responded to Plaintiff's interrogatories and requests for production of documents and produced 962 pages of Plaintiff's medical records, including

records of delivery of prescribed medications. *Dkt. 246* ¶4.

12. On Dec. 12, 2019, Plaintiff's Motion for Approval of Fee Agreement filed on Oct. 3, 2019 (*Dkt. 80*) was granted. *Dkt. 89*.

13. On July 6, 2022, Plaintiff issued his initial demand letter to Defendants stating that based on the evidence produced in discovery and the deposition testimony of Defendants Partee, Bloodworth and Addison, and Susan Shebel, RN, Plaintiff believes he would prevail on a *Monell* claim for deliberate indifference to a serious medical need against Cook County at trial because the failure to provide Plaintiff with his prescribed medications on approximately 1,053 occasions as ordered by the CCDOC physicians demonstrated a constitutional violation that amounted to deliberate indifference to his serious medical needs. *Dkt. 277-3*.

14. Per the court order entered on Aug. 8, 2022, the fact discovery deadline was extended to Oct. 15, 2022. *Dkt. 232*.

15. Nearly four years after Defendants submitted their original responses to request for production, and 10 days after the fact discovery had already closed, Defendants sent Plaintiff a counteroffer letter on Oct. 24, 2022, and disclosed for the first time "Accuflo" records as additional records to Defendants' original response to document requests. *Dkt. 246* ¶6.

16. In support of Plaintiff's Motion to Bar these "Accuflo" records, Plaintiff argued that he had been prejudiced because he had based his entire case on the disclosure of the original Cook County medical records that showed that CCDOC did not administer 1,046 doses of Plaintiff's prescribed medication doses over 156 days mostly over a fourteen-month period (from November 2015 until January 2017). In other words, Plaintiff had only received his medication 43% of the time and had not received his medication 57% of the time. *Dkt. 246* ¶6.

17. On Feb. 14, 2023, Magistrate Judge Maria Valdez granted Plaintiff's Motion to Bar

3

the "Accuflo" records as a discovery sanction finding that Defendants' untimely production of these "Accuflo" records after the close of the fact discovery deadline was not substantially justified. *Dkt. 258*.

18. Moreover, Magistrate Judge Maria Valdez held that Plaintiff was prejudiced by the late disclosure because Plaintiff did not have the "Accuflo" records at the time that he was deposed. *Dkt. 258*.

## Operative Facts

19. The Office of the Cook County Sheriff, by law, operates the Cook County Department of Corrections. *Dkt. 90 ¶7; Dkt. 183 ¶7*.

20. Defendant Cook County, through Cermak Health Services, provides medical care to detainees in the custody of the Cook County Department of Corrections ("CCDOC"). *Dkt. 90 ¶9; Dkt. 183 ¶9*.

21. The CCDOC medical staff administers prescription or over-the-counter medications. *Dkt. 90 ¶¶62-64; Dkt. 277-5*: 236:10-17.

22. As a pretrial detainee following his conviction that was overturned in October 2015, Plaintiff was primarily housed at Livingston County Jail where he regularly received his heart disease medications without interruption. *Dkt. 90 ¶¶49, 51, 53*.

23. Plaintiff was temporarily transferred to the CCDOC approximately twelve (12) times between November 2015 and November 2017 to attend court proceedings while he was awaiting the outcome of a new trial. *Dkt. 90 ¶¶50, 54*.

24. Some of Plaintiff's transfers to CCDOC lasted for one week, some lasted for several months. *Dkt. 90 ¶55*.

25. Each time he was transferred into CCDOC, he was accompanied by transfer paperwork documenting his family history of cardiovascular disease, his past heart attack, his ongoing heart disease, and his heart disease medications. *Dkt. 90* ¶56.

26. On January 4, 2022, Plaintiff, William Dukes, testified under oath at his deposition that at his first intake exam on Nov. 25, 2015, he informed the Cermak medical provider of his eight or nine medications that he was on and that he had heart disease, high blood pressure, and a stent in his right circumflex artery. *Dkt. 277-5*: 32-15-24; 21; 33:21-25; 34:1-3.

27. In the interagency directive on Medication Administration and Distribution signed by representatives for both Cook County Department of Corrections and for Cermak Health Services of Cook County, both Cermak and CCDOC agreed to adopt the following policy statement: "Prescribed medication is a medically necessary form of treatment. Safe medication passage is essential to providing inmates with medically necessary treatment and requires cooperation and coordination between CCDOC and Cermak" *See* Ex. 1, Interagency Directive 64.5.45.0.

28. In her deposition, Nurse Bloodworth (assigned to administer medications and address the medical needs of inmates within Plaintiff's housing unit while he was in CCDOC custody) testified that she agreed with this policy statement in the Cook County directive that prescribed medication as a medically necessary form of treatment and stated that it was important for inmates to receive their medications on time. *Dkt. 277-6*: 58:8-16; *Dkt. 90* ¶33.

29. Furthermore, Nurse Bloodworth testified that chest pains are a sign and symptom of a heart attack and that the signs and symptoms leading up to a heart attack are serious medical needs. *Dkt. 277-6*: 128:17-22; 129:13-15.

5

30. Nurse Bloodworth's testified she had access to Plaintiff's electronic medical record and that she would have had his medical history and all orders before she saw him in May 2017. (*Dkt. 277-6*: 113:10-16).

31. On May 21, 2017, the first time Nurse Bloodworth saw Plaintiff, the medications she administered to him were Atorvastatin (medication to treat cholesterol), and Metoprolol (a beta-blocker medication used to control high blood pressure and to prevent chest pains in hypertensive patients.) (*Dkt. 277-6*: 83:6-17; 88:7-10; 114:8-10, 21-22; 115:9-22).

32. Whenever Plaintiff was transferred to the CCDOC, and while housed there, he had issues with regularly receiving his heart disease medications without interruption. *Dkt. 90* ¶57.

33. Whenever Plaintiff failed to receive his heart disease medications at the CCDOC, he would experience chest pains. *Dkt. 90* ¶58.

34. At his deposition, Plaintiff also testified that while the nurses at Cook County Jail administered his medications, he did not always know their specific names because they had their name tags turned backwards and would not give them their names even though he asked for them. *Dkt. 277-5*: 52:25-53:7; 55:7-21; 79:17-21.

35. Another stated policy statement in the aforementioned Interagency Directive 64.5.45.0 signed by both CCDOC and Cermak representatives was that although the correctional officer does not handle the inmate's medication the officer plays an essential role in the medication distribution team. *See* Ex. 1, Interagency Directive 64.5.45.0.

36. Plaintiff was fearful for his life whenever he had chest pains, and when the correctional officers saw him lying on the ground with his shirt off in pain, and when Plaintiff reported to the correctional officers assigned to his housing unit that he was in pain, they'd keep walking and doing their business. *Dkt. 277-5*: 323:15-21.

37. The individual correctional officers had a responsibility to get the nurse so that Plaintiff could be administered his medication. *Dkt. 277-5*: 80:4-81:16.

38. It was CCDOC 's responsibility to assure movement of the inmate to wherever they needed to go or to contact nursing when there's a situation where the inmate has an as-needed medication that they need and there's no nurse present. *Dkt. 277-7*: 71:21-25; 72:12-15.

39. Officer Monshai Addison (#726603) was assigned to monitor Division 10, Tier 2-C, during periods in December 2015, January 2016, and February 2016 while Plaintiff was housed there in CCDOC custody. *Dkt. 90* ¶12.

40. Officer Addison testified at her deposition that she had probably seen Interagency Directive 64.5.45.0, and knew they were supposed to follow the policy in that directive. *Dkt. 277-9*: 66:18-24; 67:8-13; 71:10-19.

41. Despite this knowledge, Officer Addison did not meet with her superintendent to discuss any of the grievances that Plaintiff or any other inmate filed, and at her deposition Officer Addison seemed to not recall any grievances written by Plaintiff even though she acknowledged that her name was on the grievance form. *Dkt. 277-9*: 89:16-24; 90:1-19.

42. Per the interagency directive signed by representatives for both Cook County Department of Corrections and for Cermak Health Services of Cook County, both Cook County and Cermak employees and agents were charged in their interagency directives with the responsibility to communicate and cooperate between departments in order to provide inmates prompt health care in a secure manner. *See* Ex. 2, Interagency Directive 64.5.44.9 at 1.

43. Nursing supervisor Susan Shebel testified at her deposition that the pharmacy, where Plaintiff and other inmates often received their medication, was not open 24/7 at CCDOC. *Dkt. 277-7*: 247:9.

44. Nursing supervisor Susan Shebel also testified that she did not know the answer to the question as to why the first time Plaintiff William Dukes received his medication was on March 27, 2016, even though he had orders from Nov. 24, 2015 for all of his medication. *Dkt. 277-7*: 207:8-15.

45. The nursing supervisor, Susan Shebel, testified that she never had a meeting with anyone about the delay it takes for inmates to get their medication when they come to CCDOC. *Dkt. 277-7*: 246:13-22.

46. The Cermak policy D.02.1 Medication Orders sets forth in Appendix B when KOP (or Keep on Person) was not allowed for a patient, and Nitroglycerin was not one of the medications listed as a prohibited medication where KOP was not allowed for a patient. *Se*e Ex. 3, Bates # 001078.

47. Despite Nitroglycerin not being one of the prohibited medications for inmates for KOP listed in the aforementioned Cermak policies, Plaintiff was told by the nurses that he could not keep it on his person because it is a controlled substance. *Dkt. 277-5*: 113:18-21.

48. Since 2015, Nursing Supervisor Susan Shebel was responsible for answering grievances from inmates at CCDOC. *Dkt. 277-7*: 50:9-25.

49. When Plaintiff submitted grievances to employees of the Cook County Sheriff concerning his medical care or medications, they responded but often did not address the issues. *Dkt. 277-5*: 173:14-24; 174:1-3.

50. One of the grievances that Plaintiff filled out on March 29, 2016 stated that he was experiencing chest pains and requested his prescribed Nitroglycerin, but the nurse said "No." In his grievance, Plaintiff asked that the audio and video of his request be preserved. It was not until May 25, 2016 that Plaintiff got a written response from Nursing Supervisor Shebel stating

that there was "No documentation initiating request for PRN medication." Plaintiff immediately appealed her response the same day. *Dkt. 277-5*: 169:11-25; 170:23-24; 171:1-7.

51. Nurse Shebel testified that Cook County CRW social workers were responsible for picking up the Cook County grievance forms and deciding whether the form should be marked as a "non-grievance," "emergency grievance," or "grievance," and if the grievance was not checked to be "referred to Cermak," by these CRW social workers, Cermak would never see the grievance. *Dkt. 277-7*: 140:6-22; 172:12-25.

52. During the time frame as alleged in the Third Amended Complaint, Plaintiff testified that he often told correctional officers that he was having chest pains and needed to see a nurse and his prescribed nitroglycerin. *Dkt. 277-5*: 75:6-17.

53. Although Plaintiff testified that he did not know the specific names of the officers, he knew them by their faces and would hold up signs in front of the security camera that said "Chest pain. Please call med tech." He would also push the emergency call button and kick the door while holding his chest as the CCDOC security officers in the receiving area would walk back and forth and not respond to his requests for help. *Dkt. 277-5*: 75:6-23; 77:1-7.

54. Plaintiff came up with the names of the Defendant security officers that he brought his lawsuit against based on the tiers he was on at the time and the officers assigned to them, and he knew officers by their faces. *Dkt. 277-5*: 67:7-21; 238:10-23.

55. According to Nurse Shebel's testimony, CCDOC has to assure movement of the inmate to move the patient to wherever they need to go or to contact nursing when there's a situation where the inmate has an as-needed medication that they need and there's no nurse present. *Dkt. 277-7*: 71:21-25; 72:12-15.

9

56. Plaintiff testified that during the time frame from November 2015-November 2017, he had between 5-8 episodes where his chest pain lasted from one to hour to 12 hours, with at least two of them lasting overnight. *Dkt. 277-5*: 310:12-18.

57. In one of instances where his chest pain lasted throughout the whole night, Plaintiff testified that he laid down on the cold concrete of the prison floor to reduce his chest pain and that officers Altman and Buchanan-Smith not only did nothing to assist him during his complaints of pain to them, but also did not return with any help Plaintiff, nor did they respond to his complaints of chest pain, when they still saw him lying on the floor the next morning complaining of chest pain when they came by the next morning at 4:30 a.m. to deliver breakfast to Plaintiff's cell mate. *Dkt. 277-5*: 324:24-24; 325:1-17.

58. Plaintiff testified that on Jan. 11, 2016, he told Officer Addison that he was experiencing chest pains and asked her to contact Division 10 dispensary for his nitroglycerine medication, but that Officer Addison told him she was unable to get ahold of anyone at the dispensary and that he would have to wait for med line to come around, even though the dispensary was just around the corner. *Dkt. 277-5*: 329:8-24; *Dkt. 277-9*: 89:19-21; 90: 3-19.

59. In that same instance, Plaintiff then had to wait 35 more minutes until the nurse arrived who checked his blood pressure and responded that he would have to go to Cermak since there was no one in the dispensary. *Dkt. 277-5*: 330:1-8.

60. Plaintiff also testified that on March 29, 2016, he had repeatedly asked for help from several passing officers and requested med tech while he was in the bullpen area, but he was forced to wait 4 ½ hours until someone came to give him his prescribed Nitroglycerin. *Dkt. 277-5*: 278:18-25; 279:1-4.

61. There were many occasions that the nurse came to distribute medications but did not have any of Plaintiff's medications. When he asked about it, he was told by the nurse various things such as "I don't have it on the cart." "The pharmacy hasn't sent it." "You've got to wait for them." Or "Fill out a medical request and wait." *Dkt. 277-5*: 53:17-19.

62. When Plaintiff informed the med techs during his intakes from his transfer from Livingston County back to CCDOC that he was on nitroglycerin due to his prior attack, the responses he received were: "Well, it's not on your record." or "We can't give it to you." *Dkt. 277-5*: 54:1-4.

63. Although Plaintiff requested the court in February, 2016, that he be transferred back to Livingston County so that he could receive his medications in a timely manner, CCDOC refused saying words to this effect that "There is cost for housing inmates at outlying county, and Cook County does not have to honor court orders." *See* Ex. 4, CCSAO Dukes 001000-001001.

64. In his deposition, defendants' expert Dr. Dan Fintel testified that he agreed that the proper standard of care was for a doctor to ensure that prescription medication was filled and given to patients as prescribed, and that it was a reasonable expectation of a patient to fill a prescription given to them and take it as ordered. *Dkt. 277-8*: 25, 75.

65. Defendant's expert Dr. Dan Fintel also testified that based on his review of the medical records he could see that Plaintiff had a family history of heart disease and that "It's theoretically possible that the failure to receive a cardiac medication could have deleterious consequences." *Dkt. 277-8*: 49-50.

66. Additionally, Dr. Dan Fintel testified that negative anxiety and prolonged anxiety can cause harm to a patient, including damage to a person's heart. *Dkt. 277-8*: 49:10-13.

67. At his deposition, Dr. Dan Fintel also testified that assuming medications were not

filled 57% of the time, there is a potential for harm to the patient. *Dkt. 277-8*: 29:1-9.

68. At the time that Plaintiff's counsel sent their initial settlement demand letter on July 6, 2022, Defendants were in possession of all of Plaintiff's medical records during the time period set forth in the Third Amended Complaint, and Defendants only disclosed additional medical records of Plaintiff to Plaintiff's counsel after receipt of Plaintiff's initial settlement demand letter. *Dkt. 246* ¶4; *Dkt. 277-3*; *Dkt. 277-4*.

Dated: July 18, 2023                                             Respectfully Submitted,

                                                                 **WILLIAM DUKES,**

                                                                 By: */s/ John W. Mauck*
                                                                        JOHN W. MAUCK

                                                                 By: */s/ Judith A. Kott*
                                                                        JUDITH A. KOTT

John W. Mauck (IL Bar No. 1797328)
Judith A. Kott (IL Bar No. 6280395)
**MAUCK & BAKER, LLC**
One N. LaSalle St., Ste 3150
Chicago, Illinois 60602
Telephone: (312) 726-1243
Facsimile: (866) 619-8661
jmauck@mauckbaker.com
jkott@mauckbaker.com

12