**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| WILLIAM DUKES, | ) | |
| | ) | CASE NO. 1:17-cv-07095 |
| Plaintiff, | ) | |
| | ) | Honorable Judge Nancy Maldonado |
| v. | ) | |
| | ) | Magistrate Judge Valdez |
| COOK COUNTY SHERIFF'S | ) | |
| OFFICE et al. | ) | |
| | ) | |
| Defendants. | ) | |

_____

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S COMBINED CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY AND IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

NOW COMES Plaintiff WILLIAM DUKES (hereinafter referred to as "Plaintiff" or "Dukes") by and through his attorneys Mauck & Baker, LLC, and hereby moves this Honorable Court to grant his Cross-Motion for Partial Summary Judgment as to Liability in Counts I, II, and III of the Third Amended Complaint, and deny Defendants' Motion for Summary Judgment. In support of his Memorandum of Law in Support of Plaintiff's Combined Cross-Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment, Plaintiff states as follows:

## **INTRODUCTION**

On November 14, 2019, Plaintiff filed his Third Amended Complaint seeking redress under 42 U.S.C. §1983 for deprivations of his constitutional rights under the Eighth and Fourteenth Amendments alleging that during his time at Cook County Department of Corrections (hereinafter "CCDOC") the individual defendants exhibited deliberate indifference to Plaintiff's

serious medical needs by failing to address Plaintiff's chest pains and by failing to regularly provide Plaintiff his necessary heart disease medications without interruption. (*See* Dkt. 90). In Count I of the Third Amended Complaint, Plaintiff alleges that the CCDOC security staff exhibited a deliberate indifference to his serious medical needs in violation of his §1983 Eighth and Fourteenth Amendment rights. (*See* Dkt. 90). Similarly, in Count II of the Third Amended Complaint, Plaintiff alleged that the CCDOC medical staff demonstrated deliberate indifference to his serious medical needs in violation of his §1983 Eighth and Fourteenth Amendment rights. (*See* Dkt. 90). In Count III of the Third Amended Complaint, Plaintiff alleged that under the *Monell* case, Cook County and Sheriff Thomas J. Dart, in his official capacity must have known of the constitutionally deficient responses of CCDOC security staff and medical staff to inmate complaints of chest pain and interruptions to heart disease medications, and by allowing that wrongful conduct to continue they ratified the conduct of deliberate indifference to Plaintiff's serious medical needs in violation of his §1983 Eighth and Fourteenth Amendment rights. (*See* Dkt. 90).

In Defendants' Memorandum of Law in Support of their Motion for Summary Judgment, Defendants allege that Plaintiff's claims for deliberate indifference to his serious medical needs fail because no clear evidence has been presented that the Individual Correctional Officer Defendants and the Medical Defendants were aware of his cardiac condition. (*See* Dkt. 277-2) Defendants also allege that Plaintiff's Count III *Monell* Claim against Defendants Sheriff Dart and Cook County fails to allege a widespread practice in violation of Plaintiff's rights or the law. (*See* Dkt. 277-2)

Despite Defendants' claims to the contrary, the evidence in this case demonstrates knowledge of Plaintiff's serious medical condition and deliberate indifference to Plaintiff's serious medical condition on the part of the named correctional officer and medical defendants. Moreover, the evidence supports Plaintiff's claims in Count III of the Third Amended Complaint that the inaction by both Defendants Sheriff Dart and Cook County, in opposition to their official policy, constituted a

viable *Monell* claim for deliberate indifference to Plaintiff's serious medical claim for which they are liable in violation of Plaintiff's Eighth and Fourteenth constitutional rights.

Plaintiff incorporates herein his N.D. Ill. Rule 56.1 Statement of Undisputed Material Facts in Support of his Combined Cross-Motion for Summary Judgment and Opposition to Defendant's Motion for Summary Judgment.

## STANDARD OF REVIEW

Summary judgment is appropriate where the evidence demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When there are cross-motions for summary judgment, the court should "construe all inferences in favor of the party against whom the motion under consideration is made." *Mote v. Aetna LifeIns. Co.*, 502 F.3d 601, 606 (7th Cir. 2007) The U.S. Supreme Court conclusively held in *Monell* that "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under Section 1983. *Id.* At 694. The Seventh Circuit Court of Appeals has held that "where municipality has actual or constructive knowledge that its agents will probably violate constitutional rights, it may not adopt a policy of inaction." *King v. Kramer*, 680 F. 3d 1013, 1021 (7th Cir., 2012).

## ARGUMENT

### I. Defendant Individual Officers Exhibited Deliberate Indifference to Plaintiff's Serious Medical Need (Count I)

While Defendants allege in their Motion for Summary Judgment that Plaintiff has not provided any evidence in support of his contention that the Individual Officer Defendants did not show deliberate indifference to Plaintiff's serious medical needs, the evidence contradicts Defendants' allegations. In fact, Plaintiff requests this Honorable Court grant his Cross-Motion

for Summary Judgment because the evidence overwhelmingly demonstrates that the officers not only knew of Plaintiff's serious medical needs, but also exhibited deliberate indifference to them.

It is undisputed that the Individual Officer Defendants were a recognized part of the medication distribution team at CCDOC. In fact, both CCDOC and Cermak adopted a stated policy statement in the aforementioned Interagency Directive 64.5.45.0 signed by both CCDOC and Cermak representatives that although the correctional officer does not handle the inmate's medication the officer plays an essential role in the medication distribution team. *See* Ex. 1, Interagency Directive 64.5.45.0. Another interagency directive signed by representatives for both Cook County Department of Corrections and for Cermak Health Services of Cook County highlighted the importance of the duties of both Cook County and Cermak employees and agents being charged with the responsibility to communicate and cooperate between departments in order to provide inmates prompt health care in a secure manner. *See* Ex. 2, Interagency Directive 64.5.44.9 at 1. The individual correctional officers had a responsibility to get the nurse so that Plaintiff could be administered his medication. Dkt. 277-5: 80:4-81:16. It was also CCDOC 's responsibility to assure movement of the inmate to wherever they needed to go or to contact nursing when there's a situation where the inmate has an as-needed medication that they need and there's no nurse present. Dkt. 277-7: 71: 21-25; 72: 12-15.

The evidence in this case shows a pattern of the Individual Officer Defendants' knowledge of Plaintiff's serious medical need yet showing deliberate indifference to his requests for help for his repeated chest pains and request for his prescribed medication. During the time frame as alleged in the Third Amended Complaint, Plaintiff testified that he often told correctional officers that he was having chest pains and needed to see a nurse in order to get his prescribed nitroglycerin. Dkt. 277-5: 75: 6-17. According to Nurse Shebel's testimony,

CCDOC has to assure movement of the inmate to move the patient to wherever they need to go or to contact nursing when there's a situation where the inmate has an as-needed medication that they need and there's no nurse present.  Dkt. 277-7:  71: 21-25; 72: 12-15.  Although Plaintiff testified that he did not know the specific names of the officers, he knew them by their faces and would hold up signs in front of the security camera that said "Chest pain. Please call med tech." He would also push the emergency call button and kick the door while holding his chest as the CCDOC security officers in the receiving area would walk back and forth and not respond to his requests for help.  Dkt. 277-5: 75: 6-23; 77: 1-7.  Thus, Plaintiff certainly alleged deliberate indifference and Defendants have not disputed that testimony.  Based on the undisputed facts cited, Plaintiff is entitled to Summary Judgment as a matter of law on liability for those and the following other actions by Individual Officer Defendants' failure to act.

Although Individual Officer Defendants had knowledge of the CCDOC and Cermak policy directives, their inaction as it relates to Plaintiff's requests for assistance for his serious medical need of repeated chest pains did not reflect a commitment to act in a manner consistent with their responsibility under the interagency directives.  For example, Officer Monshai Addison (#726603) was assigned to monitor Division 10, Tier 2-C, during periods in December 2015, January 2016, and February 2016 while Plaintiff was housed there in CCDOC custody. Dkt. 90 ¶ 12.  Officer Addison testified at her deposition that she had probably seen Interagency Directive 64.5.45.0, and knew they were supposed to follow the policy in that directive.  Dkt. 277-9: 66:18-24; 67: 8-13; 71: 10-19.

Despite this knowledge, Officer Addison did not meet with her superintendent to discuss any of the grievances that Plaintiff or any other inmate filed, and at her deposition Officer Addison seemed to not recall any grievances written by Plaintiff even though she acknowledged that her name was on the grievance form.  Dkt. 277-9:  89:16-24; 90:1-19.  Plaintiff often reported his chest pains and medication issues to the correctional officers assigned to his housing

unit. Dkt. 277-5: 325: 3-7. Plaintiff testified that on Jan. 11, 2016, he told Officer Addison that he was experiencing chest pains and asked her to contact Division10 dispensary for his nitroglycerine medication, but that Officer Addison told him she was unable to get ahold of anyone at the dispensary and that he would have to wait for medication line to come to get his medication, even though the dispensary was just around the corner. Dkt. 277-5: 329: 8-24; Dkt. 277-9: 89: 19-21; 90: 3-19. In that same instance, Plaintiff then had to wait 35 more minutes until the nurse arrived who checked his blood pressure and responded that he would have to go to Cermak since there was no one in the dispensary. Dkt. 277-5: 330: 1-8.

## II. __The Evidence Demonstrates that Medical Staff Defendants Exhibited Deliberate Indifference to Plaintiff's Serious Medical Need (Count II)__

The Constitution requires a defendant medical provider to ensure that a well-recognized risk for a defined class of prisoners not be left to happenstance. *Glisson v. Indiana Department of Corrections*, 849 F. 3d 372, 382 (7th Circ., 2017). The *Glisson* Court found that a jury could conclude that the medical provider 'had actual knowledge that, without protocols for coordinated, comprehensive treatment, the constitutional rights of chronically ill inmates would sometimes be violated, and in the fact of that knowledge it nonetheless 'adopted a policy of inaction." *Id*. at 382.

Defendants' allegation that Plaintiff has presented no evidence to support his contention that any medical staff defendants knew of Plaintiff's cardiac condition or chest pains is false. The evidence in this case also demonstrates that the Medical Staff Defendants exhibited deliberate indifference to Plaintiff's serious medical needs. At his deposition, Plaintiff testified that while the nurses at Cook County Jail administered his medications he did not always know their specific names because they had their name tags turned backwards and would not give them their names even though he asked for them. Dkt. 277-5: 52:25-53:7; 55:7-21; 79:17-21.

6

Nurse Bloodworth was employed by Cermak as medical staff and assigned to administer medications and address the medical needs of inmates within Plaintiff's housing unit while he was in CCDOC custody.  Dkt. 90 ¶¶ 30, 32-39.  In her deposition, Nurse Bloodworth testified that she agreed with this policy statement in the Cook County directive that prescribed medication as a medically necessary form of treatment and stated that it was important for inmates to receive their medications on time.  Dkt. 277-6: 58: 8-16.  Furthermore, Nurse Bloodworth testified that chest pains are a sign and symptom of a heart attack and that the signs and symptoms leading up to a heart attack are serious medical needs.  Dkt. 277-6: 128: 17-22; 129: 13-15.  Nurse Bloodworth also testified that she had access to Plaintiff's electronic medical records and testified that she would have his medical history and all orders before she saw him in May, 2017.  Dkt. 277-6: 113: 10-16.  On May 21, 2017, the first time Nurse Bloodworth saw Plaintiff, the medications she administered to him were Atorvastatin (medication to treat cholesterol), and Metoprolol (a beta-blocker medication used to control high blood pressure and to prevent chest pains in hypertensive patients.)  Dkt. 277-6: 83:6-17; 88: 7-10; 114: 8-10, 21-22; p. 115: 9-22.

It is undisputed that there were many occasions that the nurse came to distribute medications but did not have any of Plaintiff's medications.  When he asked about it, he was told by the nurse various things such as "I don't have it on the cart." "The pharmacy hasn't sent it." "You've got to wait for them", "Fill out a medical request and wait."  Dkt. 277-5: 53: 17-19. When Plaintiff informed the med techs during his intakes from his transfer from Livingston County back to CCDOC that he was on nitroglycerin due to his prior attack, the undisputed responses he received were: "Well, it's not on your record." or "We can't give it to you."  Dkt. 277-5: 54: 1-4.  The Cermak policy D.02.1 Medication Orders sets forth when KOP (or Keep on

7

Person) was not allowed for a patient, and Nitroglycerin was not one of the medications listed as a prohibited medication where KOP was not allowed for a patient. *See* Ex. 3, Bates # 001078. Despite Nitroglycerin not being one of the prohibited medications for inmates for KOP listed in the aforementioned Cermak policies, Plaintiff was told by the nurses that he could not keep it on his person because it is a controlled substance. Dkt. 277-5: 113:18-21.

### III.  The Evidence Supports a Monell Claim Against Both Defendants Cook County Sheriff and Cook County (Count III)

#### A.  Plaintiff's Monell Claim Against Defendant Cook County Sheriff

Defendants Cook County Sheriff and Cook County can be held liable for actions or inactions that take place at Cook County Department of Corrections under Section 1982.  Under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), a local government entity can be sued directly when its official policy, custom, or practice causes a constitutional violation under Section 1983.  "To state a claim under Section 1983 against a municipality, a plaintiff must allege that an official policy or custom caused the constitutional violation, and that the official policy or custom was the 'moving force behind the violation." *Hill v. Cook Cty.*, 463 F. Supp. 3d 820, 841 (N.D. Ill. 2020).

It is also well-established that where a municipality has actual or constructive knowledge that its agents will probably violate constitutional rights, it may not adopt a policy of inaction." *King v. Kramer*, 680 F. 3d 1013, 1021 (7th Cir. 2012).  However, the undisputed evidence in this case shows a pattern of inaction and lack of coordination by Defendant Cook County Sheriff with the rest of the Defendants in violation of the policy statements mentioned in the aforementioned interagency directives.  Plaintiff complained of delays in responses to his multiple grievances related to his chest pains during the time frame of 2015-2017.  Plaintiff testified that on March 29, 2016, he repeatedly asked for medical help for his chest pains from

several passing officers and requested med tech while he was in the bullpen area, but he was forced to wait 4 ½ hours until someone came to give him his prescribed Nitroglycerin. Dkt. 277-5: 278: 18-25; 279: 1-4. Although Plaintiff requested the court in February, 2016, that he be transferred back to Livingston County so that he could receive his medications in a timely manner, Defendant Cook County Sheriff refused saying words to the effect that "There is cost for housing inmates at outlying county, and Cook County does not have to honor court orders." *See* Ex. 4, CCSAO Dukes 001000-001001.

Likewise, Defendant Cook County Sheriff failed to abide by its own policy statement in its Interagency Directive 64.5.44.0 by failing to follow-through with its provisions that charged both CCDOC and Cermak employees with the responsibility to communicate and cooperate between departments in order to provide inmates prompt health care in a secure manner. *See* Ex. 2, Interagency Directive 64.5.44.0 at 1. Since 2015, Nursing Supervisor Susan Shebel was responsible for answering grievances from inmates at CCDOC. Dkt. 277-7: 50: 9-25. When Plaintiff submitted grievances to employees of the Cook County Sheriff concerning his medical care or medications, they responded but often did not address the issues. Dkt. 277-5: 173:14-24; 174:1-3. One of the grievances that Plaintiff filled out on March 29, 2016 stated that he was experiencing chest pains and requested his prescribed Nitroglycerin, but the nurse said "No." In his grievance, Plaintiff asked that the audio and video of his request be preserved. It was not until May 25, 2016 that Plaintiff got a written response from Nursing Supervisor Shebel stating that there was "No documentation initiating request for PRN medication." Plaintiff immediately appealed her response the same day. Dkt. 277-5: 169: 11-25; 170: 23-24; 171:1-7.

Nurse Shebel also testified that Cook County CRW social workers were responsible for picking up the Cook County grievance forms and deciding whether the form should be marked

as a "non-grievance," "emergency grievance," or "grievance," and if the grievance was not checked to be "referred to Cermak," by these CRW social workers, Cermak would never see the grievance.  Dkt. 277-7:140: 6-22; 172: 12-25.

## B.  Plaintiff's Monell Claim Against Defendant Cook County

As the *Glisson* Court held, "The hands-off policy is just as much a 'policy' as the 100% enforcement policy is."  *Glisson v. Indiana Department of Corrections*, 849 F. 3d 372, 379 (7th Circ., 2017).  According to the aforementioned case law, Defendant Cook County was not allowed to adopt a 'policy' of inaction.  Yet, it was the Defendant Cook County's repeated pattern of inaction that was the moving force causing deliberate indifference to Plaintiff's serious medical needs.  Defendant Cook County engaged in a pattern and practice of inaction that a reasonable person would find represented deliberate indifference to Plaintiff's serious medical needs.  In fact, there was a clear disparity between the wording of the aforementioned clear policy statements in the various interagency directives that both CCDOC and Cermak employees were expected to abide by and their actual responses (or lack of responses) to Plaintiff's repeated calls for medical assistance over a two-year period for his chest pains and requests to receive his heart medication as prescribed.

Whenever Plaintiff was transferred to the CCDOC, and while housed there, he had issues with regularly receiving his heart disease medications without interruption. Dkt. 90 ¶ 57.  The only admissible evidence as it relates to Plaintiff's receipt of his medication is the disclosure of the original Cook County medical records that showed that CCDOC did not administer 1,045 doses of Plaintiff's prescribed medication doses over 156 days mostly over a fourteen-month period (from November 2015 until January 2017).  In other words, Plaintiff had not received his medication 57% of the time while at CCDOC.  Dkt. 246: ¶ 6.  Even though Plaintiff's counsel

objects to Defendants' counsel filing the confidential July 6, 2022 settlement demand letter, Plaintiff's counsel highlighted the records in that demand letter that had previously been produced by Defendants in response to the original requests for documents. Dkt. 277-3. Plaintiff's counsel also attached a table that reflected the documents already received by Defendant's counsel and labeled it "Dukes' Missed Doses of Medication at CCDOC." Dkt. 277-4. The missed doses table described in detail the specific heart medications that had been prescribed and the specific dates that those prescriptions were not provided to Plaintiff. Dkt. 277-4. This was not a single episode of one, or even several missed doses. The missed doses represented over ½ of the time that Plaintiff was at CCDOC when he did not receive his prescribed medication.

Moreover, defendants' own expert, Dr. Dan Fintel, testified that assuming medications were not filled 57% of the time, there is a potential for harm to the patient. Dkt. 277:8: 29: 1-9. defendants' expert Dr. Dan Fintel testified that he agreed that the proper standard of care was for a doctor to ensure that prescription medication was filled and given to patients *as prescribed*, (i.e. daily) and that it was a reasonable expectation of a patient to fill a prescription given to them and take it as ordered. Dkt. 277-8: 25, 75, emphasis added. Defendant's expert Dr. Dan Fintel also testified that based on his review of the medical records he could see that Plaintiff had a family history of heart disease and that "It's theoretically possible that the failure to receive a cardiac medication could have deleterious consequences." Dkt. 277-8: 49-50. Additionally, Dr. Fintel testified that negative anxiety and prolonged anxiety can cause harm to a patient, including damage to a person's heart. Dkt. 277-8: 49: 10-13.

In addition to Plaintiff not receiving his heart medication as prescribed, the evidence demonstrates that his continual complaints of chest pain were ignored as part of the policy of

inaction by the Defendant County. Whenever Plaintiff failed to receive his heart disease medications at the CCDOC, he would experience chest pains. Dkt. 90 ¶ 58. Nursing supervisor Susan Shebel testified that she did not know the answer to the question as to why the first time Plaintiff William Dukes received his medication was on March 27, 2016, even though he had orders from Nov. 24, 2015 for all of his medication. Dkt. 277-7:207: 8-15. Additionally, nursing supervisor Susan Shebel, testified that she never had any meeting with anyone about the delay it takes for inmates to get their medication when they come to CCDOC. Dkt. 277-7: 246: 13-22. She also testified at her deposition that the pharmacy, where Plaintiff and other inmates often received their medication, was not open 24/7 at CCDOC. Dkt. 277-7: 247:9.

It is also undisputed that Plaintiff testified that during the time frame from November 2015-November 2017, he had between 5-8 episodes where his chest pain lasted from one to hour to 12 hours, with at least two of them lasting overnight. Dkt. 277-5: 310: 12-18.

In one of instances where his chest pain lasted throughout the whole night, Plaintiff testified that he laid down on the cold concrete of the prison floor to reduce his chest pain and that officers Altman and Buchanan-Smith did nothing to assist him during his complaints of pain to them. They also did not return with any help for Plaintiff, and it is undisputed that they did not respond to any of his complaints of chest pain, when they still saw him lying on the floor the next morning complaining of chest pain when they came by the next morning at 4:30 a.m. to deliver breakfast to Plaintiff's cell mate. Dkt. 277-5: 324: 24-24; 325: 1-17.

## IV.    Plaintiff's Indemnification Claim Remains

As Plaintiff has provided evidence in this case that shows Defendants are not entitled to summary judgment on all counts, but that based on the evidence demonstrating undisputed facts in favor of Plaintiff on the issue of liability in Counts I, II, and III of the Third Amended

Complaint, Plaintiff is entitled to judgment as a matter of law.  As such, Defendants' claim that there are no claims that remain for which Cook County would need to indemnify is unfounded and without basis and should be dismissed by this Court.

## CONCLUSION

As Plaintiff has presented undisputed evidence on the issue of Defendants' liability for a deliberate indifference to Plaintiff's serious medical need, this Honorable Court should grant his Cross-Motion for Summary Judgment on the issue of liability in Counts I, II, and III of the Third Amended Complaint, and deny Defendants' Motion for Summary Judgment.  A reasonable person would find that Plaintiff's repeated subjective complaints to Defendants of his chest pains, combined with his persistent requests for his prescribed medication, were obvious signs of his serious medical condition.  The multiple delays in the provision of medical treatment by the Defendant Medical Staff and the Individual Officer Defendants' unreasonable delays in responding to Plaintiff's multiple requests for help in seeking out medical care and his prescribed medications for his chest pains were indications of Defendants' deliberate indifference to Plaintiff's serious medical needs. Although CCDOC and Cermak employees articulated knowledge and agreement with the interagency policy directives, their repeated inaction demonstrated behavior that was not congruent with the interagency policy directives.  Even though Plaintiff submitted multiple grievances (8) complaining of either failing to get his prescribed Nitroglycerin, or the failure of anyone to act to address his complaints of chest pains, he regularly received delayed responses from Nurse Supervisor Susan Shebel to his grievances.

Defendants' inaction was so persistent and widespread that Defendants Sheriff Dart and Cook County should have been aware of their failure to administer the medication as prescribed, and failure to notify the nurses of Plaintiffs' frequent complaints of chest pains, yet they

disregarded the substantial risk of harm to Plaintiff and violated the policy statements in their own interagency directives. If Defendants had failed to deliver medication only once, or a handful of times out of several thousand, Plaintiff's claim of deliberate indifference should be dismissed and probably never would have been brought. Plaintiff suggests that even a failure to deliver an inmate's medication 3-5% of the time would present a triable question to the jury on the issue of deliberate indifference. However, the record here, of 57% failure is way, way over the line separating a triable question and into the range where any juror or reasonable person would conclude that deliberate indifference was a certain conclusion in this case. As such, the undisputed facts demonstrate that Defendants Sheriff Dart and Cook County are equally liable under *Monell* as a matter of law for adopting and implementing a policy of inaction and should be held accountable for their deliberate indifference to Plaintiff's serious medical need.

WHEREFORE, for the foregoing reasons, Plaintiff William Dukes respectfully requests this Honorable Court to enter an Order as follows:

A. Grant Plaintiff's Cross-Motion for Partial Summary Judgment on the Issue of Liability regarding Counts I through III of the Third Amended Complaint;

B. Grant Plaintiff's Cross-Motion for Partial Summary Judgment on the basis that Defendants failed to administer Plaintiff his prescription medication 57% of the time from November 2015 until January 2017, or 1,045 doses of Plaintiff's prescribed medication doses over 156 days;

C. Deny Defendants' Motion for Summary Judgment;

D. Deny Defendants' Motion for Summary Judgment regarding Counts I through III of the Third Amended Complaint; and

E. Any and all further relief this Court deems just and fair.

14

Dated: July 18, 2023                    Respectfully Submitted,

**WILLIAM DUKES**

By: */s/ John W. Mauck*
      John W. Mauck

By: */s/ Judith A. Kott*
      JUDITH A. KOTT

John W. Mauck (IL Bar No. 1797328)
Judith A. Kott (IL Bar No. 6280395)
**MAUCK & BAKER, LLC**
One N. LaSalle St., Ste 3150
Chicago, Illinois 60602
Telephone: (312) 726-1243
jmauck@mauckbaker.com
jkott@mauckbaker.com

15